## AMERICAN SURETY CO. OF NEW YORK v. M-B ISE KREAM CO.
### No. 10751.

Court of Civil Appeals of Texas. Dallas.
March 28, 1931.

Rehearing Denied April 25, 1931.

Lee G. Carter, of Dallas, for appellant.
Nathaniel Jacks, of Dallas, for appellee.

JONES, C. J.

In a suit by appellant, American Surety Company of New York, against appellee, M–B Ise Kream Company, a corporation, and a number of individual defendants, a recovery against appellee was denied by the judgment rendered, but recovery was allowed against some of the defendants and denied as to others. The appeal is prosecuted by appellant only from that part of the judgment in favor of appellee. The following are the necessary facts:

In 1921, the Crystal Ice Cream Company and the Smith Ice Cream Company, corporations, separate and independent of each other, operated the business in Dallas as manufacturers of ice cream for sale to the retailer in their respective territories. During that year, A. P. McLendon began separate negotiations with the officers of each of said corporations for the purchase of each of said plants and its properties, for the purpose of operating a new ice cream company for the manufacture of ice cream. The negotiations culminated in the purchase by McLendon of the entire plants, business, and properties of these two corporations. The questions raised on this appeal are concerned only with the purchase of the Crystal Ice Cream Company, designated hereafter as the Crystal Company, though the Smith Company was taken over by McLendon at approximately the same time. A written contract for the purchase of the Crystal Company was entered into between such company and McLendon on November 21, 1921, but the sale did not become effective until December 1, 1921.

It was the intention of McLendon when he purchased these two corporations to form a corporation to be known as the M–B Ise Kream Company, and to transfer to it the purchased properties. This corporation, however, was not formed until in May, 1922, when the appellee corporation was formed and the properties and business, then being operated by McLendon, passed to appellee. During the time existing between December 1, 1921, and the organization of appellee as a corporation in May, 1922, the business was operated by McLendon under the trade-name given to the new corporation. The undisput-

ed evidence shows that there was no consolidation of the Crystal Company with appellee by such sale, and that the new corporation was not a mere continuation of the old corporation, but that the transaction was a bona fide purchase of all the properties of the Crystal Company by McLendon, and that he operated the business as a new and independent business for approximately six months, when the properties he purchased were taken over by appellee and afterwards operated by it as a new and independent business.

The Internal Revenue Department of the United States government had a claim against the Crystal Company for delinquent income taxes for the year 1918, in the sum of $1,780.15, and also for the year 1919, in the sum of $2,631.85. The Crystal Company disputed the right to these claims, and, desiring to contest the right of the government to such claims, applied to the proper forum for the privilege of executing a bond, the effect of which would be to abate the collection of these taxes, until the issue in reference to the validity of the claims could be determined by the forum existing for such purpose. The requested abatement was allowed, and on October 6, 1921, the Crystal Company, with the American Surety Company, as surety, filed the required abatement bond, in effect guaranteeing the payment of the delinquent taxes, if the Crystal Company should be adjudged in default. In consideration for the execution of this bond by appellant as surety, the Crystal Company and its president, H. F. Owsley, expressly agreed to indemnify appellant and to pay to it any losses sustained by reason of its suretyship on the bond. The contest in reference to these taxes arose over the difference between the Internal Revenue Department and the Crystal Company as to the percentage of depreciation that should be allowed the said company as a credit on its receipts. The Crystal Company contended that this depreciation should be placed at 30 per cent.; the Revenue Department contended that it should be placed at 10 per cent. The result of the contest was that the Revenue Department prevailed, and appellant, as surety on the bond, was compelled to pay the delinquent taxes, together with interest and penalties. This payment was made by appellant July 6, 1923, by checks issued to the collector of internal revenue at Dallas, Tex., and such payment is the basis for appellant's suit. Appellant's original petition was filed December 6, 1923. Final judgment in this cause was entered in the minutes of the court November 15, 1929.

As the issues in this case in a great measure depend upon the construction of the written sales contract entered into between the Crystal Company and McLendon, we deem it best to copy the entire contract, except the formal parts, and it is:

"1. That the company agrees to sell to McLendon, and McLendon agrees to purchase from the company for the consideration of $126,000.00, to be paid by McLendon to the company, that certain ice cream manufacturing business and plant, together with delivery equipment, and cars, all factory equipment, machinery, ice machinery, office furniture, and real estate, together with such other articles and equipment as are now being used by the Crystal Ice Cream Company, located in the City of Dallas, in Dallas County, Texas, at the corner of Canton and Wharton Streets. It is further agreed that the said McLendon buy from the Crystal Ice Cream Company, all of its merchandise used in the manufacture of ice cream, such invoice to include only such merchandise as is in good condition and suitable to be used in the manufacture of ice cream at prices ruling on December 1st, 1921.

"2. It is also agreed that all accounts receivable and bills receivable of the Crystal Ice Cream Company be accepted at face value by the Crystal Ice Cream Company for collection, and are to be applied as first payment to certain stockholders of Crystal Ice Cream Company for their stock in said company, and the difference between the amounts of bills receivable and accounts receivable as of December 1st, 1921, as shown by the Crystal Ice Cream Company's books, balance of payment due to the stockholders of Crystal Ice Cream Company, to be paid in two equal payments, on May 1st and August 1st, 1922, such preferred payments bearing 7 per cent. interest.

"3. McLendon further agrees to issue stock in the M–B Ise Kream Company of Dallas, Texas, to H. F. Owsley, to the amount of $21,870, in payment of his stock in the Crystal Ice Cream Company. McLendon further agrees to accept and settle in full, all of Crystal Ice Cream Company's indebtedness, covering open accounts, bills payable, and real estate mortgage amounting to $63,570.30, as per financial statement of October 31st, 1921. It is understood that the figures covering bills and accounts receivable and bills and accounts payable, are to be settled in the same ratio, December 1st, 1921, as shown in statement of October 31, 1921.

"4. That the Crystal Ice Cream Company will furnish M–B Ise Kream Company, Dallas, Texas, with a deed and abstract covering its real estate situated at Canton and Wharton Streets, Dallas, Texas.

"5. It is further agreed that this contract shall be consummated and the purchase and sale completed by the delivery of the possession of said property and premises, together with the payment of the said purchase price by McLendon, within 10 days of date hereof. Unless otherwise specified in the foregoing paragraphs of this contract. It being understood that all proper and necessary action by the Board of Directors of the Crystal Ice Cream Company shall be had and

done of the proper and legal carrying out of this contract, and that proper instrument in writing conveying said property shall be duly executed and delivered."

The financial statement of the Crystal Company for October 31, 1921, referred to in the contract, showed an indebtedness consisting of notes payable and accounts payable of $52,070.30, and a real estate mortgage indebtedness of $11,500, making a total indebtedness, as shown by said statement, of $63,-570.30. The undisputed evidence shows that, at the time the deal was closed on December 1, 1921, the accounts payable by the Crystal Company had been reduced by payments of the Crystal Company $1,867, and that the bills payable had been reduced to some extent by monthly payments on certain outstanding notes, so that the indebtedness actually existing at the time the deal was closed, as shown by said statement, was $61,-053.50. This decrease of indebtedness was taken care of by a corresponding increase in the deferred payments. All of this indebtedness was paid by McLendon.

The undisputed evidence also shows that the books of the Crystal Company did not carry the item of indebtedness for delinquent taxes claimed by the Internal Revenue Department, and that such item was not embraced in the financial statement of October 31, 1921, nor in the itemized list of such indebtedness furnished to McLendon. The undisputed evidence shows that, at the time of this sale, the Crystal Company was a solvent going corporation. The plant and buildings used in connection with its business were located in the city of Dallas at the corner of Canton and Wharton streets on a lot owned by the Crystal Company, which was transferred by deed of such company to A. P. McLendon on December 21, 1921.

The undisputed evidence further shows that McLendon, more than once, asked Owsley if the financial statement of October 31, 1921, contained all of the indebtedness his company owed, and he was repeatedly assured that such was a fact. The undisputed evidence further shows that other inquiries were made by McLendon in respect to this matter, and that an advertisement was inserted in a newspaper requesting all parties who had claims against the Crystal Company to present such claims. The undisputed evidence further shows, however, that no inquiry was made of the internal revenue collector for the Dallas district as to any outstanding claim for income taxes of the Crystal Company. Repeated demands were made on appellee to refund to appellant the amount paid by it to the Internal Revenue Department before this suit was filed.

Appellant's petition and supplemental petitions are voluminous, but it is deemed necessary to present only the grounds upon which appellant relied an showing a right of recovery against appellee. The allegations of the petition stating these grounds are full and complete, and clearly form a basis for the contentions made in the lower court in the trial of this case, and made on this appeal by appropriate assignments of error. These allegations present the following theories as to appellant's right of recovery: (a) In his contract of purchase, McLendon assumed to pay this indebtedness, and appellee is bound by such assumption; (b) the United States government had a statutory lien on all of the property of the Crystal Company for the payment of all income taxes assessed against the Crystal Company, and appellant, having been required to pay such taxes in the amount named in the petition, is subrogated to all the rights of the United States government to enforce its claims against appellee; (c) the amount sought to be recovered by appellant being a debt owed by the Crystal Company, a corporation, to appellant, and the corporation having been dissolved because of the sale to McLendon of all its assets, appellant has an equitable lien on the properties so sold against any subsequent purchaser; (d) the sale of the Crystal Company to McLendon being in violation of the provisions of article 4001, R. C. S. (Bulk Sales Law), was void against appellant as a creditor of the selling company, and by reason thereof appellee, a subsequent purchaser, is liable for appellant's claim. The allegations in reference to a violation of the Bulk Sales Law were stricken from appellant's pleading on special exception by appellee, and this action of the court is duly assigned as error.

Appellee's defensive pleading and its counter propositions of law are sufficient to form a basis for the defensive matters herein discussed.

The certificate of the secretary of state, in reference to the dissolution as a corporate body of the Crystal Company, was issued in January, 1922. In addition to its suit against appellee, appellant also sought judgment against Owsley, both on the guarantee of indemnity to appellant and as a director of the Crystal Company. Recovery was also sought against the other directors of the Crystal Company and the other stockholders. Some of these defendants filed cross-actions against Owsley as president of the Crystal Company, and appellee also filed a cross-action against Owsley, in the event it should be adjudged to be liable for appellant's claim. No appeal is prosecuted from that part of the judgment disposing of these controversies, and no comment thereon will be made. Judgment was entered by the court in favor of appellant, under the undisputed evidence, against those defendants who were shown to have been directors of the Crystal Company at the time of its dissolution, and they have not appealed. In other words, the judgment gave to appellant full relief as against the directors of the Crystal Company, denied it

any relief against those who were mere stockholders in the company, denied it relief against appellee, and the appeal is prosecuted by appellant only on that part of the judgment in favor of appellee.

■ Under the facts of this case, there can be no question but that appellant, having been required to pay a debt due the Internal Revenue Department of the United States government by the Crystal Company, is subrogated to all of the rights that the government had to enforce this payment against the Crystal Company at the time this payment from appellant was exacted. Appellant was compelled to make this payment because of the obligation it incurred in signing as surety the abatement bond of the Crystal Company. At the time the income taxes in question became due and payable, the United States government had a lien to enforce payment on all of the property of the Crystal Company perforce of a federal statute creating such lien. Section 115 of title 26 of the United States Code Annotated is the statute in question, and it reads: "(a) If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until ·the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."

■ Did this statutory lien follow the properties of the Crystal Company after the transfer of such properties to A. P. McLendon and by him to appellee; the undisputed evidence showing that neither McLendon nor appellee had any notice of the ·existence of the indebtedness forming the basis of such lien? It would unquestionably do so, unless another section of this statute provides otherwise. We think subdivision (b) of said statute does so provide. It reads: "(b) Such lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice thereof has been filed by the collector—(1) in accordance with the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law provided for the filing of such notice; or (2) in the office of the clerk of the United States District Court for the judicial district in which the property subject to the lien is situated, whenever the State or Territory has not by law provided for the filing of such notice. * * * *"

Texas did not provide for the filing of such notice until January 30, 1923, when article 6644, R. S. 1925, became effective, which provides for the filing with the county clerk the notice to fix the said tax lien against a subsequent purchaser for value, and hence Texas had no law in this respect at the time of the sale in question. It necessarily follows, under the terms of subdivision (b) of said section 115, that, in order to have made the lien valid against McLendon or appellee, as subsequent purchasers for value, the collector of internal revenue should have filed the notice of such lien with the clerk of the United States District Court for the Northern District of Texas at Dallas. The undisputed evidence shows that no such notice was filed with said clerk. From the very provisions of the federal statute creating the lien relied .upon by appellant, such lien is invalid as against McLendon and appellee. It therefore follows that, while appellee was subrogated to all of the rights of the United States government, in reference to the debt it discharged for the Crystal Company, there was no statutory lien in existence in favor of the government, and appellant's right of subrogation gave it no lien whatever on the properties purchased by McLendon.

■ Did appellee, by McLendon's written contract, assume to pay the indebtedness of the Crystal Company to the Internal Revenue Department for the delinquent income taxes? While appellee was not the direct purchaser of the assets of the Crystal Company, it is made clearly to appear that McLendon was purchasing the assets of the Crystal Company for the purpose of organizing the appellee corporation; and, without deciding the question as to whether the assumption of a debt by McLendon would be in law the assumption by appellee, for the purpose of this decision, we shall assume such to be the fact. As to the debts assumed, the contract of purchase is clear and explicit. That portion of the contract reads: "McLendon further agrees to accept and settle in full all of the Crystal Company's indebtedness covering open accounts, bills payable and real estate mortgage, amounting to $63,570.30, as per financial statement of October 31, 1921. It is understood that the figures covering bills and accounts receivable and bills and accounts payable are to be settled in the same ratio, December 1, 1921, as shown in the statement of October 31, 1921."

The plain meaning of this language is that there was assumed by McLendon only such indebtedness as is evidenced by the financial statement·of October 31, 1921. It necessarily follows that, if an indebtedness existed against the Crystal Company, not shown by such statement, then it was not assumed by McLendon, and, as the undisputed evidence shows that appellant's claim was neither shown by such statement nor by any entry ·in the books of the Crystal Company, payment of it was not assumed by the written contract.

In. addition to the clear and unambiguous language in which the assumption of indebtedness by McLendon is stated, other recitals

in the contract as to the manner in which the consideration of $126,000 was to be paid by McLendon make it clear that there was no assumption of any indebtedness other than that specifically described in the contract. The Crystal Company was to accept as cash the face value of the bills receivable and accounts receivable. McLendon was to receive as credit the face value of the notes payable and accounts payable, shown by said statement, as such values existed at the date of closing the transaction. Another credit he was to receive was the sum of $11,500 shown as mortgage indebtedness of the Crystal Company. All of these items of indebtedness of the Crystal Company McLendon assumed to pay, and the contract treated such assumption as cash payments on the recited consideration. The remainder of the consideration due, after the deduction of these credits and the value of the stock to be issued to Owsley, was to be paid by the execution of the two notes representing the deferred payments. The amount of the deferred payments was to be determined in a fixed and certain manner, to wit, to deduct from the total consideration of $126,000 the sum representing the amount of the notes and accounts receivable, retained by the Crystal Company, the amount of the notes and accounts payable, as shown by said financial statement and assumed by McLendon, the mortgaged indebtedness, and the named value of stock to be issued to Owsley. There was no provision made to charge against McLendon any other indebtedness. We therefore hold that appellee did not assume this income tax indebtedness, and overrule all assignments of error in respect to this issue.

If, however, we be mistaken in our construction of the terms of the written contract in respect to the indebtedness assumed by McLendon, and the contract does not show, as a matter of law, that only the indebtedness specified therein was so assumed, then there was at most raised a jury question as to the contention of the parties in respect to the proper construction of the contract. The trial court seems to have been of the opinion that there was such a jury question raised, and submitted same to the jury in the form of a special issue. Such special issue and the verdict thereon is: "No. 1: Do you find and believe from a preponderance of the evidence that it was the intention of the parties to the contract of sale by the Crystal Ice Cream Company that the M–B Ise Kream Company or A. P. McLendon, for the M–B Ise Kream Company, was to accept and settle in full all of the Crystal Ice Cream Company's indebtedness, covering open accounts, bills payable and real estate mortgages, regardless of whether such indebtedness amounted to more or less than $63,570.30, and regardless of whether all of such indebtedness was included in the typewritten list of accounts or the typewritten list of notes introduced in evidence? Answer, 'No.'"

The court also submitted in this connection special issue No. 2, which is: "No. 2: Do you find and believe from a preponderance of the evidence that A. P. McLendon or any agent of his making the purchase of the assets of the Crystal Ice Cream Company had notice of any fact or circumstance, which would put a reasonably prudent person on inquiry of a nature which would, if followed with ordinary diligence, have disclosed the fact that there was a delinquent income tax debt? Answer, 'No.'"

Appellant was of the opinion that such jury issues were raised by the evidence, and requested the submission of special issues covering the same subject-matter, which were refused by the court, presumably on the ground that such issues were covered in the main charge.

Did McLendon take the assets of the Crystal Company, charged with an equitable lien in favor of appellant, for the payment of its claim? In reaching a conclusion on this question, it must be borne in mind that the Crystal Ice Cream Company, at the time of its sale, was a solvent going corporation; that the transaction by which McLendon became the owner of the assets of the Crystal Company was not a consolidation of one corporation with another, nor the formation of a new company or corporation for the purpose of continuing the old company, but was an outright purchase by him of the assets of the Crystal Company. Those decisions that deal with the sale of the assets of an insolvent corporation, and those decisions that deal with the merger or consolidation of two corporations, are governed by different principles, and are not applicable to the instant case.

The purchase of the assets of one corporation by another, as declared by 7 R. C. L. p. 183, are very similar, in the matter of the liability of the purchaser for the debts of the seller, to the liability of an individual who purchases the assets of a debtor, and the purchasing corporation does not, merely by reason of the purchase, become liable for the debts of the selling corporation. In the same paragraph the same authority states a general rule of law that is controlling in the instant case: "So it may be stated as a general rule that in order to render the purchasing company personally liable for the debts of the selling corporation, it must appear that (a) there be an agreement to assume such debts; (b) the circumstances surrounding the transaction must warrant a finding that there was a consolidation of the two corporations; or (c) that the purchasing corporation was a mere continuation of the selling corporation; or (d) that the transaction was fraudulent in fact. * * *"

The above rule obtains in this state. Lyons-Thomas Hdwe. Co. v. Perry Stove Mfg. Co., 86 Tex. 146, 24 S. W. 16, 22 L. R. A. 802; Orr & Lindsley Co. v. Thompson, 89 Tex. 501, 35 S. W. 473; Temple Lbr. Co. v. Pineland, etc., Co. (Tex. Civ. App.) 25 S.W.(2d) 675; Panhandle Nat'l Bank v. Emery, 78 Tex. 505, 15 S. W. 23; Cattlemen's Trust Co. et al. v. Beck (Tex. Civ. App.) 167 S. W. 753, 756. The last-cited case states the rule as follows: "We have concluded, however, that appellants' twenty-first assignment is well taken, which urges that the court erred in rendering judgment for plaintiff against the Cattlemen's Trust Company of Ft. Worth for $742, the amount of the two smaller notes. In the first place there is no evidence in the record showing or tending to show that the new company assumed the liabilities of the old. The law seems to be that, in the absence of an agreement to this effect on the part of the new company, it is not bound for the obligations of the old."

This announcement is sustained by a long list of cited authorities. It is true, on a mo tion for rehearing, the court set aside this judgment, for the reason that the court was "in error in holding that there was no evidence showing that the Cattlemen's Trust Company of Ft. Worth assumed the liabilities of the Cattlemen's Trust Company of Arizona. * * *" The above-quoted announcement of law was not withdrawn.

■ The facts of the instant case show that McLendon was a bona fide purchaser of the properties of the Crystal Company; that there was no agreement to assume appellant's claim; that the circumstances surrounding the transaction did not permit a finding that the Crystal Company was consolidated with, or was to be consolidated with, appellee; that appellee was not formed for the purpose of a mere continuation of the Crystal Company; that the selling of its assets by the Crystal Company was not for the purpose of defrauding creditors. Hence, under the general rule above quoted, no equitable lien existed against the property purchased by McLendon in favor of appellant, and no liability of appellee to pay this claim was incurred.

Again, the sale to McLendon appears to have been for the full value of the assets of the Crystal Company and for more than its book value, as disclosed by the financial statement of October 31, 1921. Article 1388, R. S. 1925, constituted the president and directors of the Crystal Company trustees for the creditors and stockholders to wind up its affairs at the time the corporation was voluntarily dissolved by the required vote of the stockholders. The undisputed evidence shows that there came into the hands of these trustees from the collection on assets, never delivered to McLendon, a sum of money equal to more than four times the amount of appellant's claim, and that appellant was the only creditor of the Crystal Company whose debt was not assumed and paid by McLendon. This sum of money resulted from the collection of accounts and notes receivable retained by the Crystal Company. The law directs, under a provision of article 1388, supra, that: "Said trustees shall be severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall have come into their hands." This article also gives the claim of a creditor preference over the claims of stockholders. So, at the time of the voluntary dissolution of the Crystal Company as a corporation, there was actually in the hands of the directors of said company, who are trustees of the creditors and stockholders, a trust fund amply sufficient for the purpose and charged first with the payment of appellant's claim. These trustees ignored appellant's claim, and thereby became personally responsible to appellant for the amount thereof. The trial court recognized such responsibility of the trustees, and gave judgment in favor of appellant against them for the full amount of appellant's debt. The assignments of error in respect to this issue are overruled.

■ It is claimed by assignments of error that, as appellee did not conform to the provisions of article 4001, R. S. (Bulk Sales Law), it is responsible for appellant's claim, and that the court erred in sustaining a special exception to the allegations making this issue. The transaction in question was the sale of an ice cream factory plant with its equipment for manufacturing ice cream, and all of the raw material used for such manufacturing purpose, on hand at the time of the sale. The Bulk Sales Law has no application to such sale, and the court did not err in sustaining an exception to appellant's pleading in this respect. Hobard Mfg. Co. v. Joyce & Mitchell (Tex. Civ. App.) 4 S.W.(2d) 185; Grimes v. Huntsville State Bank (Tex. Civ. App.) 12 S.W.(2d) 1087; Industrial Acc. Corpn. v. Corey (Tex. Civ. App.) 19 S.W.(2d) 365; 27 C. J. 878. All assignments of error in respect to this issue are overruled.

We have carefully examined all other assignments of error, and have reached the conclusion that they present no grounds for reversal, and it follows that this case should be affirmed.

Affirmed.