**WESTERN RESOURCES LIFE INSURANCE COMPANY et al., Appellants,**

v.

**Alton R. GERHARDT et al., Appellees.**

**No. 12552.**

Court of Civil Appeals of Texas, Austin.

June 22, 1977.

Rehearing Denied July 20, 1977.

Edward C. Small, Dennis Reese, Small, Craig & Werkenthin, Austin, for appellants.

J. Winston Chapman, J. Terry Weeks, Levbarg, Weeks & Chapman, Austin, for appellees.

SHANNON, Justice.

This is a fraud case. The important question concerns the application *vel non* of the doctrine of *de facto* merger.

Appellees[1] sued American Business and Commercial Life Insurance Company[2] and appellants[3] in the district court of Travis County for actual and exemplary damages. After trial to a jury, the district court entered judgment for appellees for $14,070 in actual and exemplary damages.

1. Appellees are Alton R. Gerhardt, Hilliard B. Smith, Larry G. Walker, Ken L. Kruemcke, Tommy F. Howell, and Kerry L. McAlister.

2. American Business and Commercial Life Insurance Company will be referred to in this opinion usually as "ABC."

3. Appellants are Western Resources Life Insurance Company and Western Resources Corporation. We will usually refer to Western Resources Life Insurance Company as "W. R. Life" and Western Resources Corporation as "W. R. Corp."

Appellees' cause of action arose from the sale to appellees of six "ABC–400" insurance contracts of American Business and Commercial Life Insurance Company. In their trial petition appellees pleaded that agents for the insurance company offered them an opportunity to invest in the insurance company by purchasing the ABC–400 contracts. Appellees alleged that the agents represented that this investment would reap tremendous profits beyond the benefits afforded by the life insurance which was a part of the contract. The opportunity to purchase the ABC–400 contract supposedly was open for only a short time and the opportunity to purchase the contracts was available only to a limited number of investors. The appellees allegedly were told that they were "founding" investors in the insurance company and that their investment was for capital gain and not merely to buy life insurance. Appellees pleaded further that the statements made by the insurance agent were false and misleading and the insurance company knew or should have known that the statements were false.

Appellees pleaded further that on March 1, 1973, American Business and Commercial Life Insurance Company merged with appellant Western Resources Life Insurance Company. Appellees averred that by reason of the merger, W. R. Life became responsible for the fraudulent acts committed by ABC in the sale of the ABC–400 contracts.

W. R. Life denied that the insurance contracts were sold by reason of any fraud or misrepresentation. W. R. Life further asserted that it had not assumed any responsibility for acts of the selling agents of ABC.

The court's charge contained fifteen special issues. The jury answered the issues in a manner to support a judgment for fraud against ABC. The jury answered further that *each* appellee should be awarded exemplary damages in the sum of $12,500. In the judgment the district court awarded exemplary damages in a sum twice the amount of each appellee's actual damages.

The parties agreed that the question of whether or not appellants were liable for the acts of ABC's selling agents was a question of law for the court's determination.

By the entry of the judgment against appellants, the district court necessarily determined, as a matter of law, that appellants were liable for the tortious acts of ABC's selling agents. That determination is the foundation for the primary question on appeal. By five points of error appellants maintain that they are not liable for the torts of the selling agents of ABC.

The important facts concerning the dissolution arrangements of ABC are as follows. In March, 1973, ABC entered into an agreement with W. R. Life whereby ABC would transfer all of its assets to W. R. Life in exchange for 346,240 shares of W. R. Corp. stock. ABC was to dissolve and distribute its assets, the W. R. Corp. stock, to its shareholders. ABC was to retain $25,000 to pay the expenses of dissolution, with any unused balance to be remitted to W. R. Life. The agreement was that ABC's contingent liabilities were *not* being assumed by W. R. Life.

Pursuant to the agreement between the corporations, the board of directors of W. R. Life was to be increased from nine to fifteen members with the six new directors to be designated by ABC. W. R. Corp. also agreed to place three of ABC's directors on its board. In addition, W. R. Corp. stated that it intended to affiliate ABC's agency managers and agency force with W. R. Life.

Appellants urge that the above described transactions effectuated a reinsurance agreement pursuant to Tex.Ins.Code Ann. § 3.10 (1963). Appellants argue further that appellees' remedy is found in Tex.Bus. Corp.Act Ann. § 7.12 (1956) which gives appellees the right to pursue their claims and pursue ABC's assets by filing suit against the directors, officers and stockholders of ABC to whom the assets of the corporation were distributed.

Appellees urged, and the district court necessarily concluded, that the above trans-

actions resulted in a *de facto* merger of ABC and W. R. Life.

When one corporation transfers or sells its assets to another corporation, the purchaser is not liable usually for the debts and liabilities of the transferor, including those liabilities arising from the tortious conduct of the transferor. Nevertheless, there are several exceptions to that rule which are recognized in most jurisdictions. The purchasing corporation cannot escape liability for the debts and torts of the selling corporation wherein (1) the purchaser expressly or impliedly assumes the debts; (2) the transaction is tantamount to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation; (4) the transaction is entered into fraudulently to escape liability; or (5) the purchaser did not pay adequate consideration for the sale or transfer. *Menacho v. Adamson United Co.,* 420 F.Supp. 128 (D.N.J.1976). The proof of any one of the exceptions results in liability attaching to the purchasing corporation. *McKee v. Harris-Seybold Co.,* 109 N.J.Super. 555, 264 A.2d 98 (1970).

In the case at bar, W. R. Life in the agreement expressly disclaimed the assumption of ABC's tort liability. In addition, appellees never contended that the purchase price was inadequate or that the transaction was entered into fraudulently to escape liability. Appellees did make an effort to prove that the new arrangement was no more than a continuation of the old business. It is not necessary for us to determine whether or not appellees were successful in that effort for the reason that an overview of the entire transaction has convinced us that the effect was a merger of the two corporations, and not, as appellants insist, merely a reinsurance agreement.

The factors which are indicative of a *de facto* merger are set out in *Shannon v. Samuel Langston Co.,* 379 F.Supp. 797 (W.D.Mich.1974). Those factors are summarized below.

(1) There is a continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations.

(2) There is a continuity of shareholders which results from the purchasing corporation for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.

(3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.

(4) The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

The imposition of liability upon the succeeding corporation is grounded upon the notion that no corporation should be permitted to commit a tort and avoid liability through corporate transformations or changes in form only. If a corporation continues to exist, or is merged into another corporation, the policy is that liability should be retained.

When the transaction between W. R. Life and ABC is examined, it is seen that every factor in a traditional corporate merger, as well as in a *de facto* merger, is present. ABC transferred all of its shares and assets to W. R. Life in consideration for shares in W. R. Corp. W. R. Life assumed all of the contractual obligations of ABC. ABC was absorbed by W. R. Life and ABC was later dissolved. The officers and directors of both corporations were joined in an enlarged board of directors. W. R. Life expressed the intent that ABC's then present personnel would be retained in the employment of W. R. Life. The shareholders of ABC surrendered their shares for shares in W. R. Corp.

The most important factor in determining whether a transaction is a *de facto*

merger seems to be whether the consideration for the sale of the assets was for cash or shares of stock in the surviving corporation. If the purchasing corporation paid for the assets by issuing stock to the seller corporation, the transaction is usually considered a *de facto* merger. *Shannon v. Samuel Langston Co., supra; Applestein v. United Board and Carton Corp.,* 60 N.J.Super. 333, 159 A.2d 146 (1960); *Farris v. Glen Alden Corp.,* 393 Pa. 427, 143 A.2d 25 (1958). To the contrary, if the transfer of assets is paid for in cash, the transaction is generally considered to be a bona fide sale of assets without tort liability following the purchasing corporation. *Menacho v. Adamson United Co., supra; Kloberdanz v. Joy Manufacturing Co.,* 288 F.Supp. 817 (D.Colo. 1968); *McKee v. Harris-Seybold Co., supra; American Surety Co. v. M–B Ise Kream Co.,* 38 S.W.2d 118 (Tex.Civ.App.1931), aff'd, 65 S.W.2d 287 (Tex.1933).

In the case at bar, the purchasing corporation paid for the assets by issuing stock to the seller corporation. Accordingly, we have concluded that the transaction was a *de facto* merger, and the purchasing corporation assumed ABC's tort liability.

Appellants argue that even in the event that it is held that they assumed the tort liabilities of ABC, that liability should not include liability for exemplary damages. Appellants direct our attention to the fact that appellees made no contention or produced no proof that the transactions were sham and were entered into by the parties for the purpose of cutting off or defrauding third parties. Appellants say that to permit appellees to obtain exemplary damages would allow them a windfall in that they would have access to a larger fund than they would have had, had they recovered only against ABC, or had ABC been placed into receivership. Furthermore, appellants maintain that the punishment meted out by exemplary damages would fall upon the wrong parties, *all* of appellants' stockholders. Appellants claim that the only deterrent effect would be that, in the future, companies would be reluctant to purchase the assets of other insurance companies, an effect contrary to public policy.

We admit the logic of appellants' argument with respect to their liability for exemplary damages, but the law seems to be contrary to their position. The successor corporation assumes all responsibility for all of the outstanding tort claims of the merging corporations, including exemplary damages. *Investors Preferred Life Insurance Co. v. Abraham,* 375 F.2d 291 (10th Cir. 1967); *Thomas v. E. J. Korvette, Inc.,* 329 F.Supp. 1163 (E.D.Pa.1971), rev'd on other grounds, 476 F.2d 471 (3rd Cir. 1973).

From what has been written, it is obvious that we disagree with appellants' position as to Tex.Bus.Corp.Act Ann. § 7.12 (1956). In our opinion, sec. 7.12 is cumulative of other remedies and is not an exclusive remedy.

We have discussed the important points in the case. The balance of the points of error and the cross-points have been considered, and as they have no merit, those points are overruled.

The judgment is affirmed.

Affirmed.