Lucio **SUAREZ** and Texas Employers' Insurance Association, Appellants,

v.

**SHERMAN GIN COMPANY,** formerly Hardwicke-Etter Corporation, Nelson J. Kemp, C.E. Bryant, Jr., Louis B. Hands, Eric K. Nix, R.M. Gordon, Van Webster, Jr., R.C. Kirkpatrick, Jr., J.L. Dickenson, Lucille Carlson, Andrew J. Harrington, and Continental Conveyor and Equipment Company, Appellees.

No. 05–84–00202–CV.

Court of Appeals of Texas, Dallas.

July 17, 1985.

Rehearing Denied Aug. 13, 1985.

Mark Smith, Cecil Kuhne, Lubbock, for Texas Employers'.

John B. Kyle, Sherman, for appellees.

Before SPARLING, GUILLOT and HOWELL, JJ.

SPARLING, Justice.

Appellant Lucio Suarez sued appellee Sherman Gin Co. and others[1] to recover damages for personal injuries sustained in an accident involving a cotton ginning machine manufactured by Hardwicke-Etter Co. Prior to the accident, Hardwicke-Etter sold its assets, changed its name to Sherman Gin Co., and was dissolved as a corporation on October 3, 1977. Suarez was injured on November 18, 1977. Appellees filed a motion for summary judgment based on the undisputed fact that Sherman Gin Co. had ceased to exist as a legal entity before Suarez was injured. The trial court granted the motion and rendered summary judgment for appellees.[2]

Suarez' three points of error present two questions: (1) Can Suarez recover damages for post-dissolution injuries under the trust fund theory from former directors, officers and shareholders of a dissolved corporation; and (2) can he invoke the de facto merger doctrine to recover damages from a corporation which buys a dissolved corporation's assets? We answer both questions negatively; therefore, we affirm the trial court and hold that Suarez cannot recover against any of the appellees.

Several years after the manufacture of the ginning machine that injured Suarez, appellee Continental Conveyor & Equipment Co. began acquiring Hardwicke-Etter stock, and by 1975 Continental Conveyor owned more than 95 percent of Hardwicke-Etter's stock. Hardwicke-Etter continued to operate as a separate corporation and in March 1977 sold all of its assets that related to the manufacture of cotton ginning machines to Lummus Industries.[3] Pursuant to its sale agreement with Lummus, Hardwicke-Etter changed its corporate name to Sherman Gin Co. On October 3, 1977, Sherman Gin Co. was dissolved as a corporation and its assets were distributed to appellees Continental Conveyor & Equipment Co., Lucille C. Carson, and Andrew J. Harrington.

Suarez was injured on November 18, 1977, and thereafter brought this suit, claiming that his injuries were proximately caused by the negligent design, manufacture and marketing of the ginning machine

1. Named defendants/appellees are former directors of Sherman Gin Co., including Nelson J. Kemp, C.E. Bryant, Jr., Louis B. Hands, Eric K. Nix, R.M. Gordon, Van Webster, Jr., R.C. Kirkpatrick, Jr. J.L. Dickenson; former shareholders of Sherman Gin Co., including Lucille C. Carlson, Andrew J. Harrington, and Continental Conveyor and Equipment Co. Lummus Industries, a defendant in the original suit below, is not a party to this appeal.

2. Texas Employers' Insurance Association intervened seeking to recover workers' compensation and medical benefits paid to Suarez and also appeals the trial court's judgment against Suarez. We will discuss T.E.I.A.'s claims separately at the end of this opinion.

3. Suarez' cause of action against Lummus Industries was severed and disposed of in the trial court, and Suarez did not appeal the lower court's summary judgment in favor of Lummus.

by Sherman Gin Co., formerly Hardwicke-Etter Co. Suarez invokes the so-called "trust fund theory" to support his contentions that former Sherman Gin Co. directors, officers, and shareholders are liable because they distributed and accepted the dissolved corporation's assets. He relies on the de facto merger doctrine in asserting that Continental Conveyor is liable because it impliedly assumed all of Sherman Gin's liabilities when it purchased the majority of Sherman Gin's stock in 1975. We overrule Suarez' contentions regarding the trust fund theory based on the Texas Supreme Court's decision in *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547 (Tex.1981). Further, we hold that no de facto merger occurred between Sherman Gin and Continental Conveyor.

### THE TRUST FUND THEORY

At common law, the dissolution of a corporation terminated the corporation's legal existence, so that all legal proceedings to which it was party were abated. *Hunter*, 620 S.W.2d at 549–50. To alleviate the harsh effect of the common law on creditors, the equitable trust fund theory evolved to allow a dissolved corporation's creditors to pursue assets that had been distributed to shareholders. 620 S.W.2d at 550. The trust fund theory eventually extended to apply "whenever the assets of a dissolved corporation are held by any third party, including corporate officers and directors, so long as the assets are traceable." *Hunter*, 620 S.W.2d at 550.

In *Hunter*, a case of first impression whose facts are identical in all major respects to the facts of this case, the supreme court analyzed the common-law trust fund theory and concluded that it has been supplanted entirely by TEX.BUS. CORP.ACT ANN. art. 7.12 (Vernon 1980), entitled "Survival of Remedy After Dissolution," which provides in part:

A. The dissolution of a corporation either (1) by the issuance of a certificate of dissolution by the Secretary of State, or (2) by a decree of court when the court has not liquidated the assets and business of the corporation as provided in this Act, or (3) by expiration of its period of duration, shall not take away or impair any remedy available to or against such corporation, its officers, directors, or shareholders, *for any right or claim existing, or any liability incurred, prior to such dissolution* if action or other proceeding thereon is commenced within three years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The shareholders, directors, and officers shall have power to take such corporate or other action as shall be appropriate to protect such remedy, right, or claim. [Emphasis added]

Construing the legislative intent of article 7.12, the *Hunter* court said, "Because the statute applies to officers, directors, and shareholders of a dissolved corporation, it embodies the trust fund doctrine but only to the extent that the doctrine allows recovery for *pre-dissolution* claims." 620 S.W.2d at 550–51 (emphasis added). Suarez' cause of action accrued after the corporation was dissolved, as did the injured plaintiff's in *Hunter*. The supreme court refused to extend the applicability of the trust fund theory to cases involving post-dissolution injuries:

Article 7.12 expresses a legislative policy to restrict the use of the trust fund theory to pre-dissolution claims, and to protect shareholders, officers and directors of a dissolved corporation from prolonged and uncertain liability.

. . . .

*If the legislature had intended for shareholders of a dissolved corporation to be liable for causes of action which accrue after dissolution, it could have easily provided so within the statutory language of Article 7.12. . . .* We believe the exclusion of such a provision to be significant.

620 S.W.2d at 551–52 (emphasis added).

Therefore, we hold that article 7.12 precludes Suarez from recovering damages under the trust fund theory from Sherman

Gin., or from its former directors, officers or shareholders, including Continental Conveyor.

## THE DE FACTO MERGER DOCTRINE

Suarez also contends that de facto mergers occurred between Sherman Gin and Lummus Industries and between Sherman Gin and Continental Conveyor. As previously noted, the trial court rendered summary judgment for Lummus in a separate action which Suarez did not appeal. Therefore, Suarez' claims against Lummus are not part of this appeal. Concerning the existence of a de facto merger between Sherman Gin and Continental Conveyor, we note at the outset that neither the supreme court nor the legislature of Texas has adopted the de facto merger theory. Appellant cites us to the law of other jurisdictions, where several factors are generally considered indicative of a de facto merger:

(1) There is a continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations.

(2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.

(3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.

(4) The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

*Shannon v. Samuel Langston Co.,* 379 F.Supp. 797, (W.D.Mich.1974).

■ The de facto merger doctrine has been applied only once by a Texas court, in *Western Resources Life Insurance Co. v. Gerhardt,* 553 S.W.2d 783 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.), in which the effect was to hold acquiring corporations responsible for all liabilities of corporations whose assets they purchased notwithstanding the absence of an agreement to assume such liabilities or the contractual negation of such an assumption. 553 S.W.2d at 786–87. The Texas legislature passed legislation directly contrary to the *Gerhardt* result during its first session following the *Gerhardt* decision, when it amended TEX. BUS.CORP.ACT ANN. art. 5.10 (Vernon 1980) to add section B:

B. A disposition of all, or substantially all, of the property and assets of a corporation requiring the special authorization of the shareholders of the corporation under Section A of this article:

(1) is not considered to be a merger or consolidation pursuant to this Act or otherwise; and

(2) Except as otherwise expressly provided by another statute, *does not make the acquiring corporation responsible or liable for any liability or obligation of the selling corporation that the acquiring corporation did not expressly assume.* [Emphasis added]

Although section B of article 5.10 was not yet in effect when Continental Conveyor acquired Sherman Gin's stock, we are compelled by several factors to hold that no de facto merger occurred between Sherman Gin and Continental Conveyor. First, the Texas Supreme Court declined to adopt the de facto merger doctrine even prior to the enactment of article 5.10(B). Second, the legislature's prompt action to override *Gerhardt* and statutorily preclude application of the de facto merger doctrine in Texas clearly states a public policy opposed to the doctrine. *See Castilla v. Trinity Industries,* 626 S.W.2d 798, 802 (Tex.App.—San Antonio 1981, no writ) (Baskin, J. concurring) (decided on other grounds); *accord* TEX.BUS.CORP.ACT ANN. art. 5.10(B) comment 2 (Vernon 1980). Third, assuming arguendo that the de facto merger doctrine could properly be applied in a case arising before article 5.10(B), we find that

the facts of this case do not meet the criteria set out in *Gerhardt*, 553 S.W.2d at 786–87, for proving the existence of a de facto merger. In particular, the *Gerhardt* court stated that the "most important factor in determining whether a transaction is a *de facto* merger seems to be whether the consideration for the sale of the assets was for [sic] cash or shares of stock in the surviving corporation." 553 S.W.2d at 786–87 (italics in original). Citing authority from other jurisdictions, the court concluded that "if the transfer of assets is paid for in cash, the transaction is generally considered to be a bona fide sale of assets without tort liability following the purchasing corporation." 553 S.W.2d at 787. Continental Conveyor paid *cash* for Hardwicke-Etter (Sherman Gin) stock. In *Gerhardt*, the purchasing corporation bought the selling corporation's assets for *stock* in the purchasing corporation, a transaction which the court stated "is usually considered a *de facto* merger." 553 S.W.2d at 787 (italics in original).

Accordingly, we hold that no de facto merger occurred between Continental Conveyor and Sherman Gin, formerly Hardwicke-Etter, and thus Suarez cannot recover damages on that theory.

### TEXAS EMPLOYERS' INSURANCE ASSOCIATION'S CLAIM

Texas Employers' Insurance Association intervened in this suit seeking to recover workers' compensation and medical benefits paid to Suarez by T.E.I.A.

T.E.I.A. contends that Sherman Gin has waived or is estopped from asserting the defense of dissolution because according to T.E.I.A., Sherman Gin made false representations in its affidavit for dissolution and purchased insurance against continuing liability. T.E.I.A. maintains that Sherman Gin had an obligation to market a defect-free product, *Pearson v. Hevi-Duty Electric*, 618 S.W.2d 784 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.), and had an "implied duty" to compensate for injuries caused by any breach of that obligation. Thus, T.E.I.A. argues, because the cotton gin was not defect-free when manufactured and released into the stream of commerce, Sherman Gin had not, at dissolution, discharged "all liabilities and obligations of the corporation" as required by TEX.BUS.CORP.ACT ANN. art. 6.04 (Vernon 1980), and as alleged in Sherman Gin's articles of dissolution. We disagree with T.E.I.A.'s characterizing Suarez' cause of action as a pre-dissolution liability or obligation of Sherman Gin.

Suarez' cause of action did not accrue until he was injured, and he was not injured until after Sherman Gin's dissolution. Therefore, "an implied duty to provide compensation" to Suarez was not among Sherman Gin's obligations at dissolution. The Business Corporation Act does not require that corporations foresee future tort liability; thus the subsequent accrual of Suarez' cause of action does not render Sherman Gin's articles of dissolution false. Nor do we find merit in or authority to support T.E.I.A.'s assertion that by purchasing insurance against possible existing debts or claims, Sherman Gin has waived or is estopped from asserting dissolution as a defense to post-dissolution claims.

T.E.I.A. also contends that the insurance company which carried Sherman Gin's continuing liability policy was not discharged from Suarez' claim by Sherman Gin's dissolution. This contention is predicated on the assumption that Sherman Gin was, at some point, answerable to Suarez. However, since Suarez' claim did not exist prior to Sherman Gin's dissolution, Sherman Gin is not liable, TEX.BUS.CORP.CODE ANN. art. 7.12 (Vernon 1980); thus T.E.I.A.'s contention necessarily fails. T.E.I.A.'s points of error are overruled.

The judgment of the trial court is affirmed. Costs of this appeal are assessed two-thirds against Suarez and one-third against T.E.I.A.