985 F.2d 1427
 UNITED STATES of America, Plaintiff,
v.
Royal N. HARDAGE, Oklahoma National Stockyards Company,
J.O.C. Oil Exploration, Dal-Worth Industries, Double Eagle,
Samuel Bishkin, doing business as Eltex Chemical, L & S
Bearing Company, Kerr-McGee Corporation, Cato Oil, Advance
Chemical Distribution, Inc., Allied-Signal, Inc., AT & T
Technologies, Inc., Ashland Oil, Inc., Atlantic Richfield
Company, Borg-Warner Corporation, Exxon Corporation, The
Firestone Tire and Rubber Company, Foster Feed & Seed Co.,
Gencorp, Inc., Bull HN Information Systems Inc., Magnetic
Peripherals, Inc., Maremont Corporation, Mobil Chemical
Company, Nalco Chemical Company, Oklahoma Gas & Electric
Company, The Oklahoma Publishing Company, Rockwell
International Corporation, Texaco, Inc., Texas
Instruments, Inc., Uniroyal Inc., UOP, Inc., Westinghouse
Electric Corporation, Weyerhaeuser Company, Powell
Sanitation Service, Inc., Defendants,
and
United States Pollution Control, Defendant-Appellant,
McDONNELL-DOUGLAS CORPORATION, Defendant-Appellee,
v.
A.H. BELO, doing business as Dallas Morning News, Acme Fence
& Iron Co., Alamo Group Texas, Inc., Aircraftsman, Inc.,
Agnew Auto Parts, American National Can Corporation,
Anadite, Inc., Arrow Tank Trucks, Aztec Manufacturing, Arrow
Industries, Aviall of Texas, Inc., BASF, Betz Laboratories,
Inc., Blanks Engraving, Beazers Materials, Blackwell Zinc
Company, Inc., Broadway Machine & Motor Supply, Inc., The
Bucket Shop, Inc., Charles Machine Works, Inc., Container
Supply, Inc., Carnation Company, Container Corp. of America,
Continental Can Company, Inc., Cook Paint & Varnish Co., CTU
of Delaware, Country Home Meat Company, Dart Industries,
Delta Faucet Company, Del Paint Corporation, Dixico, Inc.,
Downtown Airpark, Inc., Drilex Systems, Inc., Dubois
Chemicals, Inc., Dresser Industries, Inc., Drillers Engine &
Supply, Inc., Dura Chrome, Fisher Controls, GAF, E C
Industries, Fred Jones Manufacturing Company, General
Dynamics, General Motors Corporation, Glidden Company, SCM
Corporation, Groendyke Transport, Inc., General Electric
Company, Goodyear Tire and Rubber, Inc., H.W. Allen,
Hudiberg Chevrolet, Ingersoll-Rand Oilfield Products
Company, Hinderliter Tool, ICO, Inc., formerly known as
Rodco, Inc., Johnson Controls, Inc., Johnson & Johnson
Medical, Inc., Ortho Pharmaceutical Corp., Johnson-Johnson
Hospital, Surgikos, Inc., Kelly Moore Paint, Kerr Glass
Manufacturing, Jones-Blair Co., Laidlaw Waste, W.J.
Lamberton, Master Motor Rebuilders, Inc., Morris Fixture
Co., Madix, George McKiddie, doing business as Capitol
Greese Co., Motorolla, Northrop Worldwide Aircraft, doing
business as Earl D. Mills, Packaging Corporation of America,
Parker-Hannifin Corp., O'Brien Corporation, Printpack, Inc.,
Proctor & Gamble Manufacturing Co., Quebecor Printing,
Maxwell Communication, Riverside Press, Reliance Universal,
Inc., Rotex Corporation, Sherwin Williams Company, Star
Manufacturing, Sermatech, Southwest Electric Company,
Stearns & Foster Bedding, Susan Crane, Teccor Electronics,
Inc., TRW, Inc., Turbodel, United Plating Works, Inc.,
Valley Steel Products Company, Unit Parts Company, United
States Brass Corporation, Van Der Horst USA, Waste
Management of Oklahoma, Western Uniform & Towel Service,
Zoecon Corporation, Xerox, Consolidated Cleaning, ABCO,
Inc., Advance Packaging, Inc., Amedco Steel Inc., American
Trailers, Anthes Inc., doing business as Anthes Hi-Reach,
Arthur G. McGee & Company, B & J Tank Truck Service, Inc.,
B.W. Solutions, Inc., Bacon Transport Company, Inc., Beauty
Craft Vanities, Blackwell Industrial, Paul Boone,
individually and formerly doing business as Lawton Plating
Co., Broadway Machine & Motor Supply, Inc., C & H Services,
Inc., CMI Corporation, Central Oklahoma Equipment
Corporation, Cimarron Aircraft Corporation, Cimarron
Manufacturing Company, Cliftco, Inc., Day International
Corporation, Diffee Motor Company, D-Mac Leasing, Inc.,
Eureka Tool Company, Ferris Resources, Inc., Fruehauf
Corporation, Fruehauf Division, Fruehauf Corporation, doing
business as Hobbs Trailer, Hobbs Trailer, Vernon Garney,
individually and doing business as Auto Saver, Glidden
Coating, a Division of SCM Corporation, Hamm & Phillips
Service Company, Industrial Fabrication Co., Jackie Cooper
Olds-GMC, Inc., James Bute Company, William Jenkins,
individually and doing business as Foster Septic Tank,
J.F. Smith & Sons, Inc., Kelsey-Hayes Corporation, also
known as Kelsey Axle & Brakes Co., Bill Lance, Larry Goad &
Company, Lassiter Enterprises, Inc., Materials Recovery
Enterprises, Inc., McAlester Public Schools, Bob McBroom,
individually and doing business as American Furniture
Stripping, Ray McGee, individually and doing business as
Quality Drum Service, Grease Company, Medley Material
Handling Inc., Metroplex Sanitation, Inc., Mistletoe Express
Service, Inc., Napko Corporation, Newman Bros. Trucking
Company, Noble Chemical Corporation, The City of Norman,
Oklahoma Tank Service, Oklahoma Transportation Company, Page
Industries, Inc., Powell Electric Manufacturing Company,
George Powell, individually and doing business as Powell
Service Company, Premier Industrial Corp., doing business as
Kent Industries, RWR Steel Company, Rabar Enterprises, Inc.,
Ram Transports, Inc., Reliance Universal Inc., S & S Plating
Company, Solvent Manufacturing Company, Inc., Sooner Oil
Patch Services, Inc., Spector Red Ball, Inc., Steelcraft,
Inc., Sublett & Associates, Inc., Sunwest Industries of
Oklahoma, Inc., Raymond Switzer, individually and doing
business as Switzer & Gypsum Lime Company, T.I.P., Inc.,
Thermo King Sales & Service of Oklahoma, Inc.; Triangle
Engineering Company, Trigg Drilling Company, Inc., Victor
Equipment Co., Waste Services, Inc., Welch Enterprises,
Inc., Jim Wesley, individually and doing business as Jim's
Septic Tank, Western Commercial Transport, Inc., Westran
Corporation, Witco, Inc., XAL Corporation, Thomas Engel,
A-Better Sanitation Service, Inc., Reagent Chemical &
Research, Inc., Sun Exploration & Prod. Co., Cameron Iron
Works, J.C. Penney Co., Inc., Rohm & Haas Seeds, Inc.,
Phillips Petroleum Company, South Prairie Construction Co.,
The Atchison, Topeka and Santa Fe Railway Company, Nordam
Corp., National Can Corp., Land & Marine Rental Co.,
formerly known as Tesoro Land & Marine Rental Co., Goodyear
Tire and Rubber, Inc., Crowl Machine & Heat Treating Co.,
Crane Carrier Co., Corning Glass Works, Delta Faucet Co.,
Occidental Chemical, John Zink Co., General Motors Corp.,
Dura-Chrome Industries, Inc., The Dow Chemical Co., also
known as Dow Industrial Service of the Dow Chemical Co.,
Dowell Division of the Dow Chemical Co., & Brasos Oil & Gas
Division of the Dow Chemical Co., IUTS Liquidating Corp.,
formerly know as Industrial Uniform & Towel Supply Inc.,
Clyde's Carburetor Service, Inc., Amoco Prod. Co., formerly
known as Pan American Petroleum, Dover Resources, Inc.,
Hudiburg Chevrolet, Inc., AMF Tuboscope, Eason Oil Co.,
Fox-Smythe Transportation Co., International Crystal Mfg.
Co., KOBE, Inc., Nelson Electric Power Service, Inc.,
Newspaper Printing Corporation, Ryder Truck Rental, Inc.,
formerly known as Wilco Truck Rental, Inc., Southwest
Electric Company, Star Mfg. Co. of Oklahoma, Corken
International Corp., formerly known as Corken Pump Co.,
Glow-Lite Corp., (ARTRA), General Electric Company, Ford
Motor Co., Conoco, Inc., E.I. Dupont De Nemours & Co.,
Continental Oil Co., Day International Corporation,
(Electric Hose & Rubber), Central Sales Promotion, Inc.,
Sooner Ford Truck Sales, Inc., W & W Steel Co., Chromalloy
American, Brittain Brothers, ICO, Inc., formerly known as
Fodco, Inc., Sucker Rod Service, and Rodcore, Inc., Homco
International, doing business as A-1 Bit & Tool, Tom Brown's
Optical Service, Inc., Third-Party-Defendants.
 No. 92-6101.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 16, 1993.
 
 Raymond T. Reott (Theodore R. Tetzlaff and Gary W. Ballesteros, of Jenner & Block, were with him on the briefs), of Jenner & Block, Chicago, IL, for defendant-appellant.
 Susan L. Gates (Michael D. Graves, was with her on the brief), Tulsa, OK, for defendant-appellee.
 Before TACHA and BALDOCK, Circuit Judges, and BROWN, District Judge.*
 TACHA, Circuit Judge.
 
 
 1
 Defendant-Appellant United States Pollution Control, Inc. ("USPCI") appeals a judgment of the United States District Court for the Western District of Oklahoma finding USPCI liable in indemnification for McDonnell Douglas Corporation's ("MDC") costs relating to the Hardage Superfund Site and awarding attorneys' fees and prejudgment interest. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
 
 I. Background
 
 2
 This appeal arises out of a suit filed in 1986 by the United States for relief under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., for the cleanup of the Royal N. Hardage Industrial Waste Site ("Hardage Site") near Criner, Oklahoma. MDC and USPCI were among 37 defendants named in that suit. MDC generated hazardous waste deposited at the Hardage Site; USPCI transported MDC's and other parties' waste to the Hardage Site. Due to the size and complexity of the litigation, the district court divided the case into four phases: Phase I determined the appropriate cleanup remedy; Phase II determined the liability of the named defendants to the government as responsible parties under CERCLA; Phase III resolved all cross-claims and third-party claims; and Phase IV allocated the amounts to be paid by the liable parties.
 
 
 3
 In Phase I, the district court opted not to implement the government's proposed remedy, instead favoring the remedy proposed by the Hardage Steering Committee ("HSC").[1] In Phase II, MDC, along with most of the HSC defendants, stipulated to liability as a generator of hazardous waste pursuant to CERCLA § 107(a)(3). USPCI contested its liability, but was found liable as a transporter of hazardous waste pursuant to CERCLA §§ 106 and 107(a)(4). Although certain facts and findings of Phases I and II will be relevant to this appeal, we do not revisit the merits of those decisions here. Rather, this appeal centers on the district court's resolution of cross-claims for indemnification between MDC and USPCI and the proper amounts to be paid therefrom--Phase III and IV issues respectively.
 
 
 4
 For purposes of this appeal, MDC began Phase III in 1988, when it filed its claim for indemnification against USPCI for any expenses arising out of the Hardage Site. MDC based this claim on an indemnification clause found in two transport and disposal contracts between MDC and USPCI. In 1990, USPCI responded in kind when it sought indemnification from its customers, including MDC, pursuant to language contained on the USPCI standard-form shipping tickets. In its order entered August 16, 1990, the district court dismissed USPCI's "shipping-ticket" claim, finding the indemnification language inapplicable under the facts of the case. In the interim, both sides filed for partial summary judgment against the other on the indemnification provisions contained in the transport and disposal contracts. In its order entered February 20, 1991, the district court granted summary judgment against USPCI and for MDC.
 
 
 5
 The litigation then entered Phase IV. The district court found that MDC was entitled to be indemnified by USPCI in the amount of $1,486,464.08. This amount represented assessments paid by MDC to the HSC for the HSC's response costs and legal expenses and also included additional legal expenses incurred directly by MDC in its Hardage Site defense. In addition, the court awarded prejudgment interest on the HSC assessments in the amount of $369.574.03. The district court has since awarded additional prejudgment interest, MDC's Rule 54(d) costs, and post-judgment interest.
 
 
 6
 USPCI timely appealed the judgment of the district court. It alleges the following errors: (1) MDC was not entitled to summary judgment on the competing indemnification provisions; (2) USPCI was entitled to summary judgment on the shipping-ticket claims and under the transport and disposal contracts; (3) the district court erroneously awarded "unreasonable" defense costs; and (4) prejudgment interest was inappropriate.
 
 II. Indemnification
 
 7
 We review a trial court's grant or denial of summary judgment de novo, applying the same standards used by the district court. Osgood v. State Farm Mutual Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir.1990).
 
 
 8
 We also review the district court's dismissal of USPCI's shipping-ticket cross-claim de novo. "[T]he dismissal of a complaint is proper if, taking all well-pleaded facts as true and construing them in the light most favorable to the plaintiff, it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." National Commodity & Barter Ass'n v. Gibbs, 886 F.2d 1240, 1244 (10th Cir.1989).
 
 
 9
 MDC and USPCI each seek indemnification from the other for their respective liabilities as CERCLA responsible parties. CERCLA § 107(e)(1) provides:
 
 
 10
 No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.
 
 
 11
 42 U.S.C. § 9607(e)(1) (emphasis added). The plain meaning of this language is that, although responsible parties may not altogether transfer their CERCLA liability, they have the right to obtain indemnification for that liability. See Mardan Corp. v. C.G.C. Music, Ltd., 804 F.2d 1454, 1458 (9th Cir.1986); Purolator Prods. Corp. v. Allied-Signal, Inc., 772 F.Supp. 124, 128-29 (W.D.N.Y.1991).
 
 
 12
 The parties agree that Oklahoma law governs the interpretation and construction of the indemnification provisions.[2] Our task therefore is to ascertain and apply Oklahoma law such that we reach the result that would be reached by an Oklahoma court. See Adams-Arapahoe Sch. Dist. No. 28-J v. GAF Corp., 959 F.2d 868, 870 (10th Cir.1992). We review de novo the district court's rulings with respect to Oklahoma law. Salve Regina College v. Russell, --- U.S. ----, ----, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).
 
 
 13
 We first consider whether MDC was entitled to indemnification under the transport and disposal contracts. Between March 1973 and October 1979, USPCI transported over 250,000 gallons of hazardous waste generated by MDC to the Hardage Site. These shipments occurred under two contracts between MDC and USPCI. In 1972, the parties entered into Contract No. MRS-1340 ("1972 Contract"), whereby USPCI agreed to transport and dispose of hazardous substances generated by MDC. In 1977, the parties entered into Contract No. S & S-2046 ("1977 Contract"), which superseded and replaced the 1972 Contract and which provided for substantially the same transport and disposal services. Both the 1972 and 1977 Contracts contained several essentially identical indemnification provisions: Attachment A to both contracts contains an indemnification provision running in MDC's favor; Attachment B to both contracts contains an indemnification provision running in USPCI's favor; and the Supplemental Terms and Conditions to both contracts contains yet another indemnification clause favoring MDC. This case turns on the resolution of these purportedly antithetical contractual provisions.
 
 
 14
 We begin our inquiry with the actual language of the contracts.[3] MDC proffers two indemnification provisions running in its favor. First, Attachment A provides:
 
 
 15
 [USPCI] shall furnish his own equipment and warrants that the material obtained by him pursuant to this contract shall be transported and disposed of in a manner which will not cause harm or damage to persons or property and agrees that he will hold [MDC] harmless from any claim of loss or damage resulting from the transporting or disposal of said materials.
 
 
 16
 Second, the Supplemental Terms and Conditions states:
 
 
 17
 [USPCI] hereby agrees to indemnify and save harmless [MDC] ... against all liability, obligations, claims, loss and expense (1) caused or created by [USPCI] ... arising out of work hereunder....
 
 
 18
 USPCI counters with its own indemnification provision from the transport and disposal contracts. Attachment B provides:
 
 
 19
 [MDC] and the Government agree to indemnify and save harmless [USPCI], its agents and employees against all liability, obligations, claims, losses and expenses (1) caused or created by MDC and the Government, its subcontractors, or the agents and employees of either, whether negligent or not, arising out of work hereunder, or (2) arising out of injuries (including death) suffered or allegedly suffered by employees of MDC and the Government or its subcontractors (i) in the course of their employment or (ii) in the performance of work hereunder.
 
 
 20
 Applying Oklahoma law, we conclude that MDC was properly awarded summary judgment for indemnification. "An indemnification agreement is a valid agreement in Oklahoma, and is governed by statute." Fretwell v. Protection Alarm Co., 764 P.2d 149, 152 (Okla.1988); see also Okla.Stat.Ann. tit. 15, §§ 421-430 (West 1966). Under Oklahoma law, an agreement to indemnify a party for its own negligence[4] "must meet the following three conditions: (1) the parties must express their intent to exculpate in unequivocally clear language; (2) the agreement must result from an arm's-length transaction between parties of equal bargaining power; and (3) the exculpation must not violate public policy." Transpower Constructors v. Grand River Dam Auth., 905 F.2d 1413, 1420 (10th Cir.1990). Because USPCI does not assert either that the agreement was not an arm's length deal or that it violates public policy, our inquiry focuses on whether the parties unequivocally expressed an intent to indemnify. "Intent must be determined by construing the contract as a whole, and the court must construe the contract so as to give effect to each provision." Greenberg v. Service Business Forms Indus., 882 F.2d 1538, 1540 (10th Cir.1989) (applying Oklahoma law), cert. denied, 493 U.S. 1045, 110 S.Ct. 843, 107 L.Ed.2d 838 (1990). We therefore analyze the various indemnification provisions separately and as a whole.
 
 
 21
 We first find that MDC is entitled to indemnification from USPCI under Attachment A, which indemnifies all losses "resulting from" the transportation or disposal of MDC's hazardous waste. Although an indemnification agreement must clearly and unequivocally express an intent to exculpate the indemnitee for its own acts, it need not specifically refer to those acts in order to achieve that result. Transpower, 905 F.2d at 1421. Rather, such an intent may be found where the language of the indemnification is so broad and all-inclusive that it necessarily sweeps all events--including those occurring because of the indemnitee's actions--into its coverage. Id.; see also 41 Am.Jur.2d Indemnity § 15, at 701-02. Although Oklahoma has not addressed the effect of the precise language presented in this case, our analysis of Oklahoma law leads us to conclude that the term "resulting from" is the type of all-inclusive and unambiguous language sufficient to exculpate MDC for its strict generator liability.
 
 
 22
 In Colorado Milling & Elevator Co. v. Chicago, Rock Island & Pacific Railroad Co., 382 F.2d 834 (10th Cir.1967), we interpreted a lease contract that indemnified any loss " 'aris[ing] from or ... connected with (1) any act or omission on the part of the Lessee ... or (2) any condition whatsoever in the premises.' " Id. at 836 (emphasis omitted) (applying Oklahoma law). We held that, because the broad language was "all-inclusive," the intent of the parties to indemnify was necessarily clear and unequivocal. Id.; see also Trumbower v. Sports Car Club of Am., Inc., 428 F.Supp. 1113, 1114-16 (W.D.Okla.1976) (phrase "on account of" sufficient to trigger exculpatory indemnification) (applying Oklahoma law). These results are consistent with both the ordinary scope and meaning of the words used and with other related decisions. See, e.g., Tyler v. Dowell, Inc., 274 F.2d 890, 894-95 (10th Cir.) (phrase "in the course of" sufficiently expresses intent for exculpatory indemnification) (applying New Mexico law), cert. denied, 363 U.S. 812, 80 S.Ct. 1248, 4 L.Ed.2d 1153 (1960); Purolator Prods., 772 F.Supp. at 131 n. 3 (phrase "relating to or arising out of" triggers indemnification for CERCLA responsible party liability) (applying New York and Delaware law); Missouri Pacific R.R. Co. v. Kansas Gas & Elec. Co., No. 86-1020-K, slip op. (D.Kan. Dec. 16, 1986) (phrase "arising out of or connected with" triggers exculpatory indemnification) (applying Kansas law). But see Sinclair Oil & Gas Co. v. Brown, 333 F.2d 967, 968-69 (10th Cir.1964) (indemnity clause did not establish exculpatory indemnification because it applied only to losses "resulting from the operations" of the indemnitor ) (applying Texas law). We thus conclude that, under Oklahoma law, the indemnification in Attachment A covering losses "resulting from" the transport or disposal of MDC's hazardous waste is sufficiently all-inclusive to clearly and unmistakably express USPCI's intent to indemnify MDC for its present CERCLA liability.[5]
 
 
 23
 We next find that USPCI has failed to identify in the 1972 and 1977 Contracts any indemnificatory language running in its favor that would apply to this case. Attachment B, upon which it relies in the contract claim, covers losses "caused or created by" MDC. MDC, however, did not cause or create USPCI's liability. Rather, USPCI is a liable party under CERCLA § 107(a) because it transported or disposed of hazardous waste at the Hardage Site. As USPCI notes, transporter liability is predicated on site selection by the transporter. See 42 U.S.C. § 9607(a)(4). In Phase II of the Hardage Site litigation, however, the district court found that USPCI had indeed selected the Hardage Site for disposal of MDC's waste.[6] That judgment was appealed but is now final. We therefore conclude that USPCI, which caused its own liability by selecting and transporting waste to the Hardage site, may not claim indemnification under Attachment B.
 
 
 24
 Finally, USPCI's shipping tickets contain the following indemnification language:
 
 
 25
 Customer agrees to indemnify and save harmless [USPCI], its agents and employees, against any and all liabilities, obligations, claims, losses, and expenses (1) caused or created by Customers, its sub-contractors, or the agents and employees of either, whether negligent or not, arising out of work hereunder....
 
 
 26
 The district court dismissed USPCI's claim for indemnification against all of its generators, including MDC, based on this provision. We agree with the district court that the shipping ticket indemnification clause suffers the same infirmity as USPCI's other indemnification clauses: USPCI caused its own loss as the transporter of the hazardous waste.[7]
 
 
 27
 In sum, once each indemnification provision is analyzed individually, it becomes apparent that this case does not present, as USPCI argues, a quagmire of contradictory indemnifications. Rather, we encounter a contractual relationship in which one party--MDC--obtained sweeping indemnification while the other party--USPCI--acquired only limited protection from liability. Because the facts of this case do not trigger USPCI's limited indemnification but do trigger MDC's broad provision, we find that the district court properly granted MDC summary judgment for indemnification and properly denied summary judgment for USPCI. We further find that this same analysis supports the district court's dismissal of USPCI's claim for indemnification based on its shipping tickets.
 
 III. Attorneys' Fees
 
 28
 Under the prevailing indemnification provisions in the 1972 and 1977 Contracts, USPCI agreed to indemnify MDC for "any claim of loss or damage resulting from the transporting or disposal" of the hazardous waste. MDC seeks its attorneys' fees under Okla.Stat.Ann. tit. 15, § 427 (West 1966), which provides that indemnity against claims "embraces the costs of defense against such claims ... incurred in good faith, and in the exercise of reasonable discretion." See Gay & Taylor, Inc. v. St. Paul Fire & Marine Ins. Co., 550 F.Supp. 710, 718 (W.D.Okla.1981) (stating "general rule that unless an indemnity contract otherwise provides, it indemnifies the contracting party against all costs including attorneys' fees").
 
 
 29
 The district court awarded to MDC the following amounts:
 HSC Assessments:
 Hardage Steering Committee $ 565,671.07
 Brown, Maroney Trust Fund 633,621.00
 Southwest Title and Trust Co. 20,204.00
 United States Court Clerk 1,000.00
 Legal Fees Paid Directly by MDC:
 Hall, Estill $ 254,255.30
 McKinney, Stringer 1,069.75
 Travel Expenses/In"House Counsel:
 Dan Summers $ 10,642.96
 -------------
 Total: $1,486,464.08
 
 
 30
 The parties stipulated that 48% of MDC's HSC assessments--$585,838.30--represents costs attributable to attorneys' fees.
 
 
 31
 In its opinion entered February 12, 1992, the district court concluded that MDC was entitled to the full $1,486,464.08. Regarding the attorneys' fees paid directly by MDC and the in-house expenses, the court applied section 427(3) and determined that, some duplication of effort notwithstanding, those expenses were reasonably incurred. USPCI does not appeal that ruling.
 
 
 32
 As to the attorneys' fees included in the HSC assessments, the district court concluded that, because the indemnification covered any loss--not just reasonable loss--the issue of reasonableness was relevant only, if at all, to MDC's conduct in approving and paying the assessments. USPCI contends that all attorneys' fees, whatever form they take, must pass the "reasonableness" test and that the legal expenses underlying the HSC assessments were in many cases unreasonable and therefore unrecoverable.
 
 
 33
 An award of attorneys' fees typically represents a finding of fact subject to review for clear error and reversible only if " 'it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.' " Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d 1182, 1185 (10th Cir.1990) (quoting LeMaire ex rel. LeMaire v. United States, 826 F.2d 949, 953 (10th Cir.1987)). USPCI, however, does not contest the lower court's factual findings of reasonableness regarding MDC's direct legal costs. Rather, it challenges the court's decision to restrict the reasonableness inquiry regarding the HSC assessment attorneys' fees to the narrow question of whether it was reasonable to incur those expenses by joining the HSC at all. This involves a question of the proper scope and interpretation of Oklahoma law, a question which we review de novo. Salve Regina College, --- U.S. at ----, 111 S.Ct. at 1221.
 
 
 34
 It is clear that in the ordinary case the indemnitee may recover its attorneys' fees incurred in defending against the indemnified liability only insofar as those fees were "incurred in good faith, and in the exercise of reasonable discretion." Okla.Stat.Ann. tit. 15, § 427 (West 1966). The scope of Oklahoma's statutory reasonableness requirement as applied to joint defense legal fees, however, is a question of first impression. In concluding that the district court erred by not examining the legal expenses underlying the HSC assessments, we find guidance in the experiences of other courts regarding collaborative legal fees.
 
 
 35
 We first praise the steering committee members for their efforts to resolve this particular "litigatory monster." See In re Recticel Foam Corp., 859 F.2d 1000, 1001 (1st Cir.1988) (describing the litigation growing out of the San Juan DuPont Plaza Hotel Fire of 1986). As the steering committee members must have discerned, this case is the type of "complex multi-party hazardous waste case" where "[t]raditional notions of adversarial litigation, in which each party engages in its own pretrial discovery, motion practice, settlement discussions and trial preparation, could not serve the legitimate needs of the ... parties [or] of judicial economy." New Jersey Dep't. of Envt'l Protection v. Gloucester Envt'l Management Servs., Inc., 138 F.R.D. 421, 426 (D.N.J.1991). It is beyond dispute that the use of a steering committee in this case spared the unnecessary duplication of effort and expense of both the parties and the judiciary. We have no doubt that MDC substantially reduced its legal costs by joining the HSC and that its decision to join the HSC was a reasonable one.
 
 
 36
 Nonetheless, the reasonableness of using or joining a steering committee does not, by itself, establish the reasonableness of the legal expenses incurred through the joint efforts. Indeed, after examining the body of cases involving liaison counsel or steering committees, we found no case accepting such a proxy. Rather, even where joint counsel clearly provides the most cost-effective resolution available, the lawyers involved still must establish the reasonableness of their actual legal expenses. See, e.g., Gloucester Envt'l Management Servs., 138 F.R.D. at 428-431 (examining reasonableness of defendant steering committee's legal expenses in suit to compel contribution from delinquent parties). Oklahoma has articulated its own version of the "lodestar" test to determine the reasonableness of attorneys' fees, see State ex rel. Burk v. City of Oklahoma City, 598 P.2d 659, 661 (Okla.1979), and we believe that Oklahoma courts would interpret the statutory reasonableness inquiry to require the application of that test to the actual legal expenses incurred by the HSC. We therefore reverse the decision of the district court awarding MDC attorneys' fees for its HSC assessments and remand for a determination of the reasonableness of the legal expenses underlying those assessments.[8]IV. Prejudgment Interest
 
 
 37
 After initially denying prejudgment interest, the court reconsidered its decision and awarded prejudgment interest on the HSC assessments from the time of such payments. Oklahoma law provides that
 
 
 38
 any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.
 
 
 39
 Okla.Stat.Ann. tit. 23, § 6 (West 1987). The district court ultimately concluded that the HSC assessments were sums certain as of the day of payment and that prejudgment interest therefore was appropriate.
 
 
 40
 "Under § 6, 'prejudgment interest will not be allowed unless the amount of recovery is liquidated or capable of ascertainment by calculation or resort to well-established market values.' " Withrow v. Red Eagle Oil Co., 755 P.2d 622, 625 (Okla.1988) (quoting Sandpiper North Apartments, Ltd. v. American Nat'l Bank & Trust Co., 680 P.2d 983, 993 (Okla.1984)). An award of attorneys' fees is not a sum certain where the reasonableness of those fees is still to be determined by the trial court. Transpower, 905 F.2d at 1422 ("Damages are not certain where their calculation is left to the best judgment of the fact-finder."); see also Kelly-Springfield Tire Co. v. Mobil Oil Corp., 551 P.2d 671, 675 (Okla.Ct.App.1975) (reasonableness of attorneys' fees to be determined by fact-finder). Indeed, the district court, in its order entered August 5, 1991, denied MDC's first request for prejudgment interest precisely because it included the direct legal expenses for which the court had yet to "receive evidence to determine the reasonableness of the fees and costs sought." Because we hold that the district court must determine the reasonableness of the legal expenses underlying the HSC assessments, the district court's award of prejudgment interest is reversed.
 
 
 41
 AFFIRMED in part, REVERSED in part, and REMANDED for further consideration consistent with this opinion.
 
 
 
 *
 The Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 Most of the original defendants organized themselves as HSC defendants in order to enjoy economies of scale in contesting various elements of the government's CERCLA enforcement activities. USPCI originally joined the HSC but later dropped out. For background information and the disposition of the Phase I case, see United States v. Hardage, 982 F.2d 1436 (10th Cir.1992)
 
 
 [2]
 The record does not reveal whether the district court made the threshold determination of whether federal common law or state law would govern the interpretation of indemnification provisions between CERCLA responsible parties. See United States v. Kimbell Foods, Inc., 440 U.S. 715, 727-28, 99 S.Ct. 1448, 1457-58, 59 L.Ed.2d 711 (1979). Because the government's interests are unaffected by the allocation of liability between jointly and severally liable parties, we easily conclude that a uniform federal rule is unnecessary and that state law will govern the indemnification clauses. See Mardan, 804 F.2d at 1457-60
 
 
 [3]
 Because the corresponding provisions in the 1972 and 1977 Contracts are materially identical, we refer to the provisions in the 1972 Contract only
 
 
 [4]
 MDC's CERCLA liability, of course, is strict, rather than based on negligence. One court appears to fully extend the policy of the negligence rule to strict liability indemnification cases. See Purolator Prods., 772 F.Supp. at 130-31. We do not decide whether to extend the negligence rule to strict liability cases, however, because we find that MDC is entitled to indemnification even under the fullest application of the negligence rule
 
 
 [5]
 The Supplemental Terms and Conditions indemnification is not applicable under these facts because MDC, as a generator under 42 U.S.C. § 9607(a)(3), "caused" its own CERCLA liability. Cf. infra discussion of Attachment B
 
 
 [6]
 In its Findings of Fact and Conclusions of Law entered August 8, 1991, the district court found, among other things, that USPCI "contracted with Mr. Hardage to use the Hardage Site for hazardous waste disposal prior to approaching any of the customers in question [and] proposed the Hardage Site to its customers as a location for hazardous waste disposal." See also United States v. Hardage, 750 F.Supp. 1444, 1459 (W.D.Okla.1990) (detailing USPCI's site selection)
 
 
 [7]
 Because we find the shipping-ticket provision inapplicable under the facts of this case, we do not address whether its effect was barred by integration clauses contained in the transport and disposal contracts
 
 
 [8]
 We note that the reasonableness of steering committee legal expenses should reflect the context in which those expenses were incurred. For all of its benefits, a steering committee is a bureaucracy not without its warts. Even the best-run steering committees will necessarily involve some inefficiency and duplication of effort. Indeed, a steering committee might incur legitimate legal expenses simply monitoring its own progress. We therefore doubt that, under these circumstances, the Oklahoma courts would hold the HSC to the standard of efficiency expected of a single lawyer or firm