UNITED STATES of America, Plaintiff,

v.

Donald R. LANG, Wallis W. Smith, Arco Chemical Co., Atlantic Richfield Company, Exxon Corporation, and The Lubrizol Corporation, Defendants.

No. 1:94–CV–057.

United States District Court,
E.D. Texas,
Beaumont Division.

Sept. 21, 1994.

Patrick M. Casey, U.S. Dept. of Justice, Environmental Enforcement Section, Washington, DC. O. Kenneth Dodd, Asst. U.S. Atty., Beaumont, TX, for plaintiff.

Patrick Ray Cowlishaw, Cohan Simpson Cowlishaw Aranza & Wulff, Donna K. Lang, Dallas, TX, for Donald R. Lang.

Wallis W. Smith, pro se.

Kathleen M. Lavalle, Akin, Gump, Strauss, Hauer & Feld, Dallas, TX, for Arco, Atlantic Richfield.

George Shipley, Baker & Botts, Houston, TX, for Exxon Corp.

Thomas P. Alexander, Alexander & McEvily, Houston, TX, for Lubrizol Corp.

### MEMORANDUM OPINION

COBB, District Judge.

Plaintiff, the United States of America, initiated this suit to recover removal and remedial action costs under § 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9607 (1988). Plaintiff alleges that it incurred these costs at the Turtle Bayou Superfund Site (Turtle Bayou) in Liberty County, Texas.

Defendant ARCO Chemical Company (ACC) now seeks to be dismissed from the suit or, in the alternative, to be granted summary judgment. ACC claims that it is not responsible for the cleanup as it not a "successor corporation" to the liability generated by the Oxirane Chemical Company (Oxirane).

Because this Court finds that a genuine issue of material fact exists as to whether or not ACC is a successor corporation, summary judgment is improper and Defendant's motion is DENIED.

### Background

To fully understand ACC's argument, it is necessary to trace the history of both Oxirane and ACC.

Oxirane was formed in 1967 as a partnership between Arprox Corporation, a subsidiary of Atlantic Richfield Chemical Company (ARCO), and Belmont Chemical Company, Inc., a subsidiary of Halcon International, Inc. In December 1968, Oxirane began op-

erating a chemical plant in Pasadena, Texas. Plaintiff alleges that from late 1968 until 1970, hazardous wastes from Oxirane's Pasadena plant were transported to Turtle Bayou for disposal. In June 1980, a second ARCO subsidiary purchased Belmont's interest in Oxirane, making ARCO the sole owner of Oxirane and the Pasadena plant. In July 1981, Oxirane was merged into ACC, a division of ARCO. From 1981 until 1987 the Pasadena plant operated as ACC, a division of ARCO.

On June 7, 1987, ACC became a separate corporate entity and a subsidiary of (as opposed to a division of) ARCO.[1] On June 9, 1987, certain limited assets of ARCO, including Oxirane, were transferred to ACC.

Plaintiff alleges that ACC agreed, as a condition of the asset transfer, to accept all liabilities associated with Oxirane. This arguably makes ACC a successor corporation to Oxirane[2] and liable for the full amount of the cleanup.

Defendant contends that § 107(e)(1)[3] of CERCLA prevents companies from shifting their CERCLA liability. In essence, ACC is arguing that even if it wanted to accept responsibility for the alleged damage created by Oxirane, CERCLA foiled any attempt to shift liability from ARCO to ACC.

ACC gets it half right. While § 107(e)(1) ensures that *ARCO* cannot dodge its potential liability, it does nothing to prevent subsequent owners of Oxirane from being added to the chain of cleanup accountability.

### Standard of Review

It is well-settled that a motion for summary judgment can be granted only if the matters considered by the court clearly demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Hampton v. Long*, 686

F.Supp. 1202, 1209 (E.D.Tex.1988). It is equally well-settled that the burden of proving that "no genuine issue of material fact exists," rests with the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party meets this threshold, the burden shifts to the nonmoving party to demonstrate with significant probative evidence that there exists a triable issue of fact. *Kansa Reinsurance v. Congressional Mort. Corp.*, 20 F.3d 1362, 1371 (5th Cir.1994); *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir.1994). This requires that the nonmoving party produce more than some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only evidence, not unsworn pleadings, memoranda or the like, will satisfy this burden. *Larry v. White*, 929 F.2d 206, 211 n. 12 (5th Cir.1991). When a rational jury, looking at the record as a whole, could not find for the nonmoving party, no issue of material fact exists and summary judgment is proper. *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (*en banc*).

### Discussion

The First, Third, Fourth, Sixth, Eighth and Ninth Circuits have held that if a defendant is found to be a successor corporation to an entity that generated CERCLA liability, the successor corporation inherits that CERCLA responsibility. *John S. Boyd Co. v. Boston Gas Co.*, 992 F.2d 401, 405–406 (1st Cir.1993); *Smith Land & Improvement Corp. v. Celotex*, 851 F.2d 86, 92 (3d Cir. 1988), *cert denied*, 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989); *U.S. v. Carolina Transformer*, 978 F.2d 832, 837 (4th Cir.1992); *Anspec Co. v. Johnson Controls Inc.*, 922 F.2d 1240, 1246 (6th Cir.1991); *U.S. v. Mexico Feed and Seed Co., Inc.*, 980 F.2d

1. As of 10/5/89, approximately 80% of ACC's stock was owned by ARCO.

2. Oxirane is no longer in existence.

3. Section 107(e)(1) states: "No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any

person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section."

478 (8th Cir.1992); *Louisiana–Pacific Corp. v. Asarco, Inc.*, 909 F.2d 1260 (9th Cir.1990).[4] In short, if an entity is shown to be a successor corporation, it is potentially liable under CERCLA.

"The purpose of corporate successor liability ... is to prevent corporations from evading their liabilities through changes of ownership when there is a buyout or merger." *Mexico Feed*, 980 F.2d at 487 (*citing Anspec*, 922 F.2d at 1246). Any other policy would allow corporations to circumvent CERCLA liability by cleverly manipulating stock and asset transfers.

■ The general rule, however, is that a transfer of assets, by itself, does not transfer the corresponding liabilities from seller to buyer. *E.g., Louisiana–Pacific*, 909 F.2d at 1263; *Santa Maria v. Owens–Illinois Inc.*, 808 F.2d 848, 856 (1st Cir.1986). A buyer corporation will succeed to the liabilities of the seller corporation only if any of the following exist: (1) the successor has expressly or impliedly agreed to assume the liabilities of the predecessor; (2) the transaction is considered to be a de facto merger; (3) the successor may be considered a "mere continuation" of the predecessor; or (4) when the transaction was fraudulent. *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 175 (5th Cir. 1985); *Mexico Feed*, 980 F.2d at 487; *Carolina*, 978 F.2d at 838.

The central question, therefore, is whether the asset transfer of June 9, 1987, met any of the four conditions listed above.

■ The only issue over which there is any serious contention is whether ACC expressly or impliedly agreed to assume the liabilities of Oxirane when it acquired Oxirane from ARCO. If there is a genuine issue of material fact as to whether ACC agreed to assume Oxirane's liabilities, ACC is potentially a successor corporation and summary judgment will be improper.

Plaintiff offers a letter written by Peter Wynne, counsel for ARCO, as evidence that ACC did assume Oxirane's liabilities. Wynne clearly states that ACC "assumed responsibility for any past liabilities associated with the Bayport Plant.[5]" (Letter from Wynne to Myers of 2/7/89, at 2). This evidence alone is sufficient to raise a substantial doubt as to what liability ACC assumed when it acquired Oxirane. The letter is all the more damning given that neither ARCO nor ACC dispute that Oxirane was sold with liabilities in tow, but instead maintain that § 107(e)(1) of CERCLA shields ACC from any liability.

■ ARCO maintains that the plain language of § 107(e)(1) states that parties may not transfer clean-up liability.[6] ARCO contends that regardless of what liabilities ARCO and ACC attempted to swap in the June 9, 1987, deal, CERCLA prevented any meaningful exchange. Accordingly, all liability with respect to Oxirane remained with ARCO.

■ ARCO's argument demonstrates a fundamental misunderstanding of § 107(e)(1). While there is some disagreement as to the meaning of the second sentence in § 107(e)(1),[7] courts are in general agreement as to the meaning of the first sentence; notwithstanding the existence of indemnification agreements, all potentially responsible parties are jointly and severally

---

4. This Court believes that the Fifth Circuit will follow suit. By adopting the position taken by the above mentioned circuit courts, this Court furthers the objective of creating a uniform system for the enforcement of CERCLA. *See Louisiana–Pacific*, 909 F.2d at 1263; *Carolina*, 978 F.2d at 837; *Mexico Feed*, 980 F.2d at 487 n. 9; *Smith Land*, 851 F.2d at 92.

5. The Bayport Plant is ARCO's term for Oxirane's chemical plant located in Pasadena, Texas.

6. *See* note 4, *supra.*

7. The majority of the courts which have addressed the issue have held that the second sentence stands for the proposition that allocation of the cost of cleanup may only occur among *responsible* parties. *U.S. v. Hardage*, 985 F.2d 1427, 1433 (10th Cir.1993); *Am Intern. v. International Forging Equipment*, 982 F.2d 989, 994 (6th Cir.1993); *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1459 (9th Cir.1986). At least one court argues that costs of cleanup may be contractually allocated among both responsible and non-responsible (i.e. insurance companies) parties. *Harley–Davidson, Inc. v. Minstar, Inc., Amf*, 837 F.Supp. 978, 984 (E.D.Wis.1993).

liable to the government for the cleanup and/or closure costs. *U.S. v. Hardage*, 985 F.2d 1427, 1433 (10th Cir.1993); *Am Intern. v. International Forging Equipment*, 982 F.2d 989, 994 (6th Cir.1993); *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1459 (9th Cir.1986). The first sentence of § 107(e)(1) merely states that once an entity is found to be a responsible party, it cannot extricate itself from the CERCLA liability web simply by entering into an indemnification agreement with another party.[8]

Accordingly, § 107(e)(1) is not a shield which prevents ACC from attaining the status of a successor corporation.

Since Plaintiff has offered sufficient evidence to lead this Court to believe that it is possible that ACC agreed to accept all liabilities associated with the asset transfer, summary judgment would be improper.

## ORDER

Before the court is the ACC's Motion to Dismiss or Alternatively for Summary Judgment. After considering the Motion, this Court is of the opinion that the Motion should be DENIED.

---

**8.** The *Am Intern.* court succinctly summarizes the purpose of § 107(e)(1):

The underlying purpose of the statutory language under scrutiny is to ensure that responsible parties will pay for the cleanup and that they may not avoid liability to the government by transferring this liability to another. However, this purpose is not inconsistent with parties responsible for the cleanup transferring or allocating among themselves the cost associated with this liability, so long as they remain liable to the third party who can demand cleanup.
*Am Intern.*, 982 F.2d at 994.