**Daniel LICKTEIG and Denise Lickteig, Plaintiffs,**

v.

**TRI–STEEL STRUCTURES, INC., Defendant.**

**No. 99–2426–DJW.**

United States District Court, D. Kansas.

Nov. 8, 2001.

Bruce Beye, Overland Park KS, for plaintiffs.

Joseph N. Vader, Olathe, KS, Michael A. Dover, William L. Wolf, P.C., Dallas, TX, for defendant.

## MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

### I. Introduction

Plaintiffs bring this action against Defendant Tri–Steel Structures, Inc. (Tri–Steel) to recover a judgment that Plaintiffs obtained against Advanced Framing Systems, Inc. (AFS). Plaintiffs contend that

Tri–Steel is a successor to, or the continuation of, of AFS, and that Tri–Steel is thus liable to pay the judgment Plaintiffs obtained against AFS.

At the Pretrial Conference in this case, the parties agreed to forego a jury trial and to instead submit stipulated facts upon which the Court could decide this action. The parties have submitted stipulated facts as well as memoranda in support of their respective interpretations of the applicable law. Having considered the stipulated facts, the memoranda of counsel, and the applicable law, the Court is now prepared to rule.

## II. Joint Stipulations

The parties have submitted the following joint stipulations of fact for trial by the Court:

1. Plaintiffs sued AFS, a Georgia corporation, in Johnson County Kansas District Court for various causes of action in Case No. 96C10068. AFS conducted business in the State of Texas, including but not limited to, selling and fabricating materials to be used in erecting structures.

2. During the proceedings, after evidence had been presented, AFS failed to appear for the conclusion of trial and allowed the entry of default judgment in the sum of $65,453.25, plus pre-and-post judgment interest.

3. At the time of default, 85% of the stock in AFS was owned by one individual, Mr. John Brown. AFS ceased operations at approximately the time of the default, however, no actions were taken to terminate the corporation.

4. At the time AFS ceased operations, certain property was transferred to Defendant Tri–Steel a Texas corporation. That property included, but was not limited to, a leasehold including the plant used in the fabrication of steel, employ-ees at said leasehold and other corporate employees, certain physical property including raw materials for the fabrication of steel, certain designs for the fabrication and sale of steel to be used in the erection of single family residences, and a list of "distributors" under contract to AFS to sell such designs and steel. According to Tri–Steel, the total value of the assets that AFS transferred to Tri–Steel was less than $100,000.00.

5. AFS owed certain unspecified debts to Tri–Steel. According to Tri–Steel, AFS owed Tri–Steel in excess of $1,000,000. Tri–Steel accepted the transfer of assets described in paragraph 4 above in partial payment of the debts that AFS owed to Tri–Steel. No record was kept of the transfer. No legal documents were created regarding the transfer. No asset purchase agreement was entered, and no effort was made by Tri–Steel to document the termination of AFS. All these transfers were directed by Mr. John Brown, who owned and continues to own 100% of the stock in Tri–Steel.

6. Following the termination of operations by AFS, some of the "distributors" of AFS were contacted by an employee of Tri–Steel named Rick Shivley. According to Plaintiffs, Mr. Shivley advised the AFS distributors that he contacted that Tri–Steel had "taken over" the operation of AFS and that those "distributors" were advised that they could continue to order products previously supplied by AFS, and were solicited to become "distributors" of Tri–Steel. Tri–Steel admits that Mr. Shivley contacted some of AFS' distributors and offered them the opportunity to purchase product from Tri–Steel and to become Tri–Steel distributors. Tri–Steel is unaware of the exact content of Mr. Shivley's conversations with such

AFS distributors. Approximately thirty AFS distributors accepted the offer to become Tri–Steel distributors. Some of the products formerly offered by AFS can still be purchased from Tri–Steel under their "Quicksilver" line of products. These are the same products offered by AFS.

7. Mr. Lickteig contends he received a phone call from Mr. Shivley on March 4, 1998 regarding the status of AFS. Mr. Lickteig's notes of that conversation, taken contemporaneously, indicate that he was advised that AFS had been "absorbed" by Tri–Steel and that all AFS "dealers" had become Tri–Steel "dealers." Tri–Steel is unaware of the specific nature of Mr. Shivley's contact with Mr. Lickteig or other AFS distributors, however, it is Tri–Steel's position that Mr. Shivley was not authorized to represent that AFS had been "absorbed" by Tri–Steel. Rather, it is Tri–Steel's position that Mr. Shivley was authorized solely to offer certain AFS distributors the opportunity to purchase product from Tri–Steel and to become Tri–Steel distributors.

8. Following termination of operations by AFS, at the direction of Mr. John Brown, some debts of AFS were paid by Tri–Steel. Such payments continued through at least August of 1999, and possibly beyond. The debts included legal fees, including fees paid to defend the original Kansas lawsuit in 1997, settlements with various vendors, and payments to employees who continued to operate AFS. Tri–Steel contends that it has not expressly agreed to assume or pay the judgment that Plaintiffs obtained against AFS in the original Kansas lawsuit. Tri–Steel contends that there is no evidence that Tri–Steel has agreed to globally assume or pay all of AFS' debts, however, the parties further agree that certain AFS debts were paid by Tri–Steel at the direction of John Brown.

9. On or about April 28, 1997, Mr. John Brown executed a letter to legal counsel defending AFS in the Kansas lawsuit, in which he guaranteed, on behalf of Tri–Steel, that any legal fees incurred on behalf of AFS would be paid by Tri–Steel.

10. On February 24, Mr. Daniel Zimmerman, who represented AFS in the Kansas lawsuit, sued Tri–Steel under the terms and conditions of the April 28, 1997 letter alleging, in addition to the guarantee, that Tri–Steel was "the successor in interest to Advanced Framing Systems, Inc., and has assumed its assets and liabilities."

11. Mr. Zimmerman's lawsuit was tried in Johnson County District Court and judgment was entered against Tri–Steel on the petition. The parties agree that Plaintiffs believe such judgment may operate as a finding on the issue of corporate liability and Defendant believes the judgment operates solely on the validity of the guarantee by Tri–Steel, through Mr. John Brown. The parties agree that the letter from Mr. Brown does not reference corporate succession, nor do any documents discovered refer to corporate succession.

## III. Analysis and Conclusions of Law

### A. Application of Texas Law

The parties agree that Texas law applies to the substantive issues in this case. The Court will therefore apply Texas law to determine whether Tri–Steel is liable to Plaintiffs for payment of the judgment Plaintiffs obtained against AFS.

### B. Basis for Imposing Liability Against Tri–Steel

#### 1. De facto merger doctrine

 Plaintiffs first argue that Tri–Steel is obligated to Plaintiffs to pay the

judgment they obtained against AFS based on the alleged de facto merger between Tri–Steel and AFS. A de facto merger of two business entities occurs when there is no formalized agreement between the two entities, but one of the entities ceases to exist and the remaining entity takes over the operation and assets of the other entity. *Suarez v. Sherman Gin Co.,* 697 S.W.2d 17, 20 (Tex.App.Dallas 1985, writ ref'd n.r.e.) (quoting *Shannon v. Samuel Langston Co.,* 379 F.Supp. 797 (W.D.Mich.1974)). The parties have stipulated that no asset purchase agreement was· entered into between Tri–Steel and AFS. Stip., ¶ 5. Moreover, there is no evidence of any express agreement by Tri–Steel to assume AFS' obligation to pay the judgment to Plaintiffs.

A Texas Court of Appeals applied the de facto merger doctrine in *Western Resources Life Ins. Co. v. Gerhardt,* 553 S.W.2d 783 (Tex.App. Austin 1977, writ ref'd n.r.e.). The *Gerhardt* court held that an acquiring corporation was responsible for the liabilities of a corporation it purchased despite the fact that there was no agreement to assume such liabilities. *Id.* at 786–87.

Plaintiffs fail to recognize that *Gerhardt* did not remain good law for long. In its first session following the *Gerhardt* decision, the Texas legislature amended the Texas Business Corporation Act so as "to preclude the application of de facto merger in any sale, lease, exchange or other disposition of all or substantially all the property and assets of a corporation." *Mudgett v. Paxson Mach. Co.,* 709 S.W.2d 755, 758 (Tex.App.Corpus Christi 1986 writ ref'd n.r.e.) (quoting Tex. Bus. Corp. Act. art. 5.10 comment). Moreover, the comment to article 5.10 noted that the amendment expressly abrogates the *Gerhardt* decision concerning its application of the de facto merger doctrine. *Mudgett,* 709 S.W.2d at 758.

The amendment provides as follows:

A disposition of any, all, or substantially all, of the property and assets of a corporation . . .

(1) is not considered to be a merger or conversion pursuant to this Act or otherwise; and

(2) except as otherwise expressly provided by another statute, *does not make the acquiring corporation, foreign corporation, or other entity responsible or liable for any liability or obligation of the selling corporation that the acquiring corporation, foreign corporation, or other entity did not expressly assume.*

Tex. Bus. Corp. Act. art. 5.10(B) (emphasis added).

As several Texas courts have noted, "the legislature's prompt action to override *Gerhardt* and statutorily preclude application of the de facto merger doctrine in Texas clearly states a public policy opposed to the doctrine." *Id.* (quoting *Suarez v. Sherman Gin Co.,* 697 S.W.2d 17, 20 (Tex.App.Dallas 1985, writ ref'd n.r.e.)). Accordingly, "[n]umerous courts have recognized that under Texas law, a successor corporation that purchases all or substantially all of a predecessor corporation's assets is not liable for the predecessor's obligations except where such liability is expressly assumed." *Mims v. HRC AutoStaff, Inc.,* 2000 WL 251732, *5 (N.D.Tex. March 3, 2000) (citing *Glasscock v. Armstrong Cork Co.,* 946 F.2d 1085, 1094–95 (5th Cir.1991)); *McKee v. American Transfer and Storage,* 946 F.Supp. 485, 487 (N.D.Tex.1996); *Mudgett v. Paxson Mach. Co.,* 709 S.W.2d 755, 758 (Tex.App.Corpus Christi 1986, writ ref'd n.r.e.). In light of the above, this Court, too, holds that Texas does not accept the de facto merger doctrine.

Plaintiffs erroneously rely on two Texas cases for the proposition that Tri–Steel is liable to them under the de facto merger doctrine. Plaintiffs first cite *Wall v. Owens–Corning Fiberglas Corp.*, 602 F.Supp. 252, 255 (N.D.Tex.1985), which holds that "[a] purchasing corporation cannot escape liability for the torts of the transferor corporation where the transferee corporation expressly or impliedly assumes the liabilities, or where the transaction is tantamount to a merger." *Wall*, however, relied solely on *Gerhardt* for that proposition. As noted above, *Gerhardt* is no longer good law given the Texas Legislature's abrogation of the de facto merger doctrine. Plaintiffs are thus incorrect in asserting that *Wall* states Texas law.[1]

Plaintiffs also rely on *U.S. v. Lang*, 864 F.Supp. 610 (E.D.Tex.1994) in support of their de facto merger argument. *Lang*, however, addressed the issue of successor liability under the federal Comprehensive Environmental Response, Compensation, and Liability Act. Because the *Lang* Court, applied *federal* law rather than *Texas* law, Plaintiffs' reliance on *Lang* is also misplaced.

In light of the above, the Court must reject Plaintiff's de facto merger argument. The Court will decline to hold Tri–Steel liable to Plaintiffs under that doctrine.

### 2. *"Mere continuation" doctrine*

Although not expressly stated, Plaintiffs appear to argue that Tri–Steel is liable to them under the "mere continuation" doctrine. Plaintiffs assert that John Brown continued to direct the affairs of AFS through Tri–Steel and that this "continued

operations of the defunct corporation as directed by Mr. Brown" is telling evidence that a de facto merger occurred. Plaintiffs' Trial Brief, doc. 21 at 3, 4. They also cite to the fact that Mr. Brown directed the payment of certain AFS debts after AFS had ceased operations. *Id.* at 4; Stip., ¶ 8.

■■■■ The mere continuation doctrine is based on the theory that the new corporation should be held liable for the debts of its predecessor because the new corporation is a "mere continuation of the predecessor corporation." *Mudgett v. Paxson Mach. Co.*, 709 S.W.2d 755, 758 (Tex.App.Corpus Christi 1986 writ ref'd n.r.e.) (citing *Cyr v. B. Offen & Co.*, 501 F.2d 1145 (1st Cir.1974)). The mere continuation doctrine "is even a more liberal means of imposing liability upon the acquiring corporation in a purchase of assets transaction than is the de facto merger doctrine." *Id.* at 758. The continuation doctrine imposes liability upon a successor corporation, regardless of the manner in which the assets were acquired, "if the buyer purchased the 'good will' and name of the seller, operated the business in the same place, with the same employees and continued to produce the same product." *Id.* at 758 n. 4 (citing *Cyr*, 501 F.2d at 1153).

■■■ The Court need not decide whether the facts might support application of the doctrine here, as it is clear that Texas does not recognize the mere continuation doctrine. The court of appeals in *Mudgett* refused to hold a successor corporation liable for the torts committed by its predecessor under the doctrine, "in the face of

---

1. The Northern District of Texas itself has recognized that its *Wall* decision incorrectly states the law as to de facto mergers in Texas. *See Mims v. HRC Autostaff, Inc.*, 2000 WL 251732, *5 (N.D.Tex. March 3, 2000) (recog-

nizing that *Wall* erroneously relied on *Gerhardt* and holding that the Texas legislature "expressly abrogated the de facto merger doctrine as articulated in *Gerhardt*.").

clear legislative intent to the contrary." *Id.* at 758. In so holding, the court recognized that the Texas legislature had abrogated the de facto merger doctrine and noted: "Certainly if the de facto merger doctrine is contrary to the public policy of our state, so must be the mere continuation doctrine." *Id.*

For the foregoing reasons, this Court must reject Plaintiffs' apparent attempt to rely upon the mere continuation doctrine to attribute liability to Tri–Steel.

### 3. Voluntary payment of debts

■ Plaintiffs also argue that because Defendant voluntarily paid some of AFS' debts, Defendant impliedly assumed AFS' liability to Plaintiffs. This argument, too, must fail. As noted above, a corporation that purchases a predecessor's assets is not liable for the predecessor's obligations, "except where such liability is expressly assumed." *Mims v. HRC AutoStaff, Inc.,* 2000 WL 251732, *5 (N.D.Tex. March 3, 2000) (citations omitted). Article 5.10(B)(2) of the Texas Business Corporation Act requires that the acquiring corporation *expressly* assume liability before it is responsible for the debts of the dissolved corporation. Here, Tri–Steel never expressly assumed responsibility for payment of Tri–Steel's debt to Plaintiffs. Thus, the fact that Tri–Steel voluntarily chose to pay some of AFS' debts is of no consequence. The Court will therefore decline to impose liability on Tri–Steel under this theory.

### 4. Collateral estoppel

■ Finally, Plaintiffs argue that Tri–Steel is collaterally estopped to deny liability to Plaintiffs based on the judgment that Daniel Zimmerman obtained against Tri–Steel. Mr. Zimmerman represented AFS in the Kansas lawsuit that resulted in the default judgment against AFS. Stip., ¶ 10.

Mr. Zimmerman sued Tri–Steel "under the terms and conditions of the April 28, 1997 letter" in which John Brown guaranteed, on behalf of Tri–Steel, that any legal fees incurred by AFS would be paid by Tri–Steel. Stip., ¶¶ 9, 10. Mr. Zimmerman's lawsuit against Tri–Steel alleged that, "in addition to the guarantee, Tri–Steel was 'the successor in interest to [AFS]' and has assumed its assets and liabilities." Stip, ¶ 10. Plaintiffs assert that the Zimmerman judgment should operate "as a finding on the issue of corporate liability." Stip., ¶ 11. In other words, Plaintiffs contend that Tri–Steel should be collaterally estopped from claiming that it has not assumed the liabilities of AFS.

■ The full-faith-and-credit principles of Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) determine whether this Court may give the Zimmerman judgment preclusive effect. Federal courts must "accept the [preclusion] rules chosen by the State from which the judgment is taken." *Id.,* 470 U.S. at 380, 105 S.Ct. 1327. The Court will therefore look to Kansas collateral estoppel law to determine whether the Zimmerman judgment should have preclusive effect here.

■ Collateral estoppel "prevents a second litigation of the same issues between parties or their privies." *In re Estate of Beason,* 248 Kan. 803, 813, 811 P.2d 848 (1991). The following elements must be satisfied for collateral estoppel to apply under Kansas law:

(1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties must be the same or in privity; and (3) the issue litigated must have been deter-

mined and necessary to support the judgment.

*Id.*

The Court agrees with Tri–Steel that the requirements for collateral estoppel are not met here. First, the parties are not the same. Plaintiffs were not parties to the Zimmerman suit, nor were they in privity with Mr. Zimmerman. Second, there is nothing in the record indicating that the question of whether Tri–Steel assumed the liability at issue here, i.e., payment of the judgment Plaintiffs obtained against AFT, was determined in the Zimmerman suit and/or necessary to support the judgment in favor of Zimmerman. There is no reason for the Court to believe that this issue was ever conclusively determined in the Zimmerman case, as Tri–Steel had signed a letter expressly guaranteeing AFS's indebtedness to Mr. Zimmerman. Stip., ¶ 9. The Court therefore rejects Plaintiffs' collateral estoppel argument.

## IV. Conclusion

Based on the stipulated facts presented, the Court finds no basis for imposing liability against Tri–Steel for the judgment Plaintiffs obtained against AFS. There is no written document in which Tri–Steel agreed to assume or become liable for AFS' debts, and nothing in the record indicates that Tri–Steel expressly assumed liability for AFS's debt to Plaintiff. Under Texas law, the fact that Tri–Steel acquired the assets of AFS and may have continued the operations of AFS and voluntarily paid some of its debts does not render Tri–Steel liable for AFS's debt. Moreover, the judgment rendered in the Zimmerman lawsuit has no preclusive effect in this case.

IT IS THEREFORE ORDERED that under the stipulated facts and applicable law, the Court finds in favor of Defendant Tri–Steel Structures, Inc. and against Plaintiffs Daniel Lickteig and Denise Lickteig on all issues. The Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.